J.L. HENRY and Wilma Robertson and Ronald D. Robertson

v.

The UNITED STATES.

Nos. 295–75, 297–75.

United States Claims Court.

June 28, 1985.

H. Clay Robinson, Fort Smith, Ark., for plaintiffs. Bradley D. Jesson, Pryor, Robinson and Barry and Hardin, Jesson & Dawson, of counsel.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

## OPINION

MEROW, Judge:

These suits are based upon the Fifth Amendment of the Constitution of the United States and are brought under the Tucker Act, 28 U.S.C. § 1491. Plaintiffs, Wilma

and Ronald Robertson and J.L. Henry, have suffered damage to their real estate, crops and personal property as a result of a taking by defendant, the United States, of a permanent flowage easement on plaintiffs' lands in conjunction with the operation of lock and dam No. 13, near Fort Smith, Arkansas. The issue to be resolved is the proper compensation due plaintiffs. A trial was held and post-trial briefs have been filed.

### Facts

The McClellan-Kerr Arkansas River navigation project is a multi-purpose project having effects on navigation, flood control, hydropower, recreation, bank stabilization and fish and wildlife on the Arkansas River. Lock and dam 13 is located on the Arkansas River southeast of Van Buren, Arkansas. A navigation pool created by lock and dam 13 is maintained at elevation 391 feet mean sea level (msl).

Plaintiffs' lands [1] front the navigation pool created by lock and dam 13. The Robertson tract is riparian to the Arkansas River on the pool established by lock and dam 13. The Henry tract is riparian to the Poteau River at its confluence with the Arkansas River. Although the Henry tract is located along the Poteau River, it lies in the Arkansas River flood plain and is mainly flooded by the Arkansas River. On November 1, 1973, the agreed date of taking, the Robertson tract consisted of approximately 210 acres, of which approximately 55 acres were previously acquired under perpetual flowage easements by the United States. The property elevation ranges between 395 feet msl and 405 feet msl. The Henry property consisted of 435 acres, divided into a northern tract of 275 acres and a southern tract of 160 acres. The major portion of the land ranges in elevation from just above 400 feet msl to 410 feet msl, with small areas as high as 420 feet msl and as low as 390 feet msl.

1. In each case, the property at issue has been conveyed by the owners since the commencement of these proceedings. In 1977, the Henry tract was conveyed to Robert Young, and in

Both parties used the comparable sales method to determine the fair market value of the land. It was agreed that the highest and best use for the land is agricultural. Plaintiffs presented the testimony of two valuation experts. Plaintiffs' first expert, James Taylor, compared the subject properties with 10 sales in the area. Plaintiffs' second expert, John Libby, compared the tracts with 12 sales in the area. Four of these sales were also used by Taylor. Both experts' calculations resulted in the same damage figure. The following is a summary of their calculations:

#### ROBERTSON TRACT

| Before Fair Market Value: | | After Fair Market Value: | |
|---|---|---|---|
| Unencumbered land: | | Unencumbered land: | |
| 155.2 acres × $700 per acre | = $108,640 | 47.2 acres × $500 per acre | = $23,600 |
| Old easement area: | | New easement area: | |
| 55 acres × $200 per acre | = $ 11,000 | 108 acres × $200 per acre | = $21,600 |
| | | Old easement area: | |
| | | 55 acres × $200 per acre | = $11,000 |
| Total | $119,640 | | $56,200 |
| Just compensation: | $ 63,440 | | |

#### HENRY TRACT

| Before Fair Market Value: | | After Fair Market Value: | |
|---|---|---|---|
| Unencumbered land: | | Unencumbered land: | |
| 435 acres × $700 per acre | = $304,500 | 226.3 acres × $700 per acre | = $158,410 |
| | | New easement area: | |
| | | 208.7 acres × $200 per acre | = $ 41,740 |
| Total | | | $200,150 |
| Just compensation: | $104,350 | | |

Defendant presented one expert valuation witness, Robert Scruggs. Like plaintiffs' experts, Mr. Scruggs compared the fair market value of the land before and after the taking. Mr. Scruggs compared the subject properties with 15 unencumbered sales to determine the value of the land before imposition of the easement. To calculate the value after imposition of the easement, he compared the tracts with 10 comparable sales encumbered by similar

1979 the Robertson tract was conveyed to Allen Hales. The conveyances have no effect on these proceedings.

easements. Mr. Scruggs initially calculated the value of the properties before the taking at a value somewhat equivalent with plaintiffs' experts. However, upon instruction by the Southwest Division of the Corps of Engineers, Mr. Scruggs lowered these values to reflect the value of the land without enhancement by the project.[2] The record is vague in explaining the basis for these adjustments.

In determining the value of the land after the taking, Mr. Scruggs included in his calculation the benefits of the project to the properties. In developing his opinion of the value of the properties after the taking, Mr. Scruggs considered hydrology studies developed by the Corps of Engineers. These studies established that the land above the taking line, which was annually flooded before the project, suffers less flooding as a result of the project. The studies established that the project alters the timing of the natural flooding of the subject properties. As a result of the project, the properties suffer less frequent floods. The project serves only to increase the duration of floods which occur naturally.

The following is a summary of defendant's valuation:

### ROBERTSON TRACT

| Before Fair Market Value: | | After Fair Market Value: | |
|---|---|---|---|
| Unencumbered land: | | Unencumbered land: | |
| 146.4 acres × $500 per acre | = $73,200 | 39.3 acres × $500 per acre | = $19,650 |
| | | New easement area: | |
| | | 107.1 acres × $400 per acre | = $42,840 |
| Old easement area: | | Old easement area: | |
| Tillable land: | | Tillable land: | |
| 4 acres × $400 | = $ 1,600 | 4 acres × $400 per acre | = $ 1,600 |
| Woods and wasteland: | | Woods and wasteland: | |
| 37 acres × $100 per acre | = $ 3,700 | 37 acres × $100 per acre | = $ 3,700 |
| Wetland: | | Wetland: | |
| 14 acres × $24 per acre | = $ 336 | 14 acres × $24 per acre | = $ 336 |

| Bank stabilization area: | | Bank stabilization area: | |
|---|---|---|---|
| 8.2 acres × $125 per acre | = $ 1,025 | 8.2 acres × $125 per acre | = $ 1,025 |
| Total | $79,861 (rounded to $80,000) | | $69,151 (rounded to $69,250) |

Just compensation    $10,750

### HENRY TRACT

| Before Fair Market Value: | | After Fair Market Value: | |
|---|---|---|---|
| North tract: | | North tract: | |
| Tillable land: | | Unencumbered: | |
| 210 acres × $500 per acre | = $105,000 | 40.3 acres × $500 per acre | = $ 20,150 |
| Woods, waste and roads: | | New easement area: | |
| 65 acres × $100 per acre | = $ 6,500 | Tillable land: | |
| | | 169.7 acres × $350 per acre | = $ 59,395 |
| | | Woods and Waste: | |
| | | 63.8 acres × $75 per acre | = $ 4,785 |
| | | Road: | |
| | | 1.2 acres × $100 per acre | = $ 120 |
| South tract: | | South tract: | |
| Tillable land: | | Tillable land: | |
| 140 acres × $600 | = $ 84,000 | Unencumbered land: | |
| | | 139.7 acres × $700 per acre | = $ 97,790 |
| Waste, woods and roads: | | New easement land: | |
| 17 acres × $100 | = $ 1,700 | 0.3 acres | = $ 120 |
| Headquarters site: | | Woods and Waste, etc. | |
| 3 acres × $600 per acre | = $ 1,800 | Encumbered: | |
| | | 4.4 acres × $75 per acre | = $ 330 |
| Total | $199,000 | Unencumbered: Woods and waste: | |
| | | 12.6 acres × $100 per acre | = $ 1,260 |
| | | Headquarter site: | |
| | | 3 acres × $700 per acre | = $ 2,100 |
| | | | $186,050 (rounded to $186,000) |

Just compensation:  $ 13,000

Plaintiffs also seek recovery for crop damages. Plaintiff Henry claims $38,480 in damages and plaintiff Robertson claims $17,500. In support of these figures, plaintiffs presented testimony of Jessie Henry, the son of plaintiff J.L. Henry, who testified to the amount of crops damaged, their market prices and harvesting expenses. Similar testimony by Ronnie Robertson was presented regarding damages on the Robertson tract.

**2.** At trial, plaintiffs sought to introduce into evidence a deposition of Bobby J. Neil. Defendant objected. Since it is concluded that plaintiffs' before fair market value of the land used for agricultural purposes is accepted, a ruling on this issue is unnecessary.

## Discussion

### Land Valuation

Plaintiffs and defendant agree that the taking occurred on November 1, 1973 and that the highest and best use of the properties is agricultural. Courts have generally recognized that sales of comparable properties provide the best evidence of market value. *Snowbank Enterprises, Inc. v. United States*, 6 Cl.Ct. 476 (1984) (citations ommitted). In the present case, both parties used comparable sales, but calculated disparate damages. Plaintiffs maintain the Robertsons are entitled to $63,440 and the Henrys are entitled to $104,350. Defendant contends the Robertsons should receive $10,750 and the Henrys should receive $13,-000.

"[C]ourts in the past have recognized that the concept of just compensation cannot be 'reduced to a formula' or to 'inexorable rules' (*Miller v. United States*, 223 Ct.Cl. 352, 377, 620 F.2d 812, 824–25 (1980)); and that, in the final analysis, valuation is generally a matter of judgment (*United States v. Miller, supra*, 317 U.S. 369, 375 [63 S.Ct. 276, 280, 87 L.Ed. 336] (1942))." *Branning v. United States*, 6 Cl.Ct. 618, 629 (1984). The major discrepancies between the parties' valuations appear in the fair market value of the land capable of agricultural use before and after the taking. Defendant adjusted the fair market value of the land before the taking downward so as not to reflect benefits of the project and adjusted the fair market value of the land upward after the taking to reflect project enhancements.

█ The record does not support defendant's initial price reduction. The record contains only vague statements that adjustments were made, but no specific factors causing the adjustments are identified. Therefore, it is determined that plaintiffs' valuation of the previously unencumbered land suitable for agricultural use is more accurate than defendant's valuation and is

---

**3.** Plaintiffs maintain 210.2 acres of land are involved; defendant maintains 209.6 acres of land are involved. The taking determination is

---

accepted. Defendant's adjustments of the fair market value of land previously encumbered or not suited for agricultural purposes, *i.e.*, woods, waste, wetland, bank stabilization, area roads and headquarter site, is more detailed. It is a more accurate reflection of the land's value and is accepted.

█ Defendant's price adjustments of the fair market value of the property after the taking is supported by the record. Defendant presented a hydrology expert who testified that the land is subject to better flood control. Defendant's valuation expert used this information in determining the fair market value of the land after the taking. It is well established that any enhancement in value brought about by reason of a proposed improvement is excluded in determining fair market value. *Miller v. United States*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); Nichols, *Eminent Domain*, Vol. 4, § 12.3151 (1981). Defendant's adjustments in the land's value are reasonable.

█ Plaintiffs objected to defendant's valuation because Mr. Scruggs, defendant's expert, used the sales of the subject property in his comparable sales analysis. Comparable sales may include the subject property as long as it is an arm's length transaction. *See Miller v. United States*, 223 Ct.Cl. 352, 382, 620 F.2d 812, 828 (1980).

The relevant value of the two tracts is determined to be as follows:

### Robertson tract [3]

| | |
|---|---|
| Before fair market value | |
| Unencumbered land | |
| 146.8 acres × $700 per acre | $102,760 |
| Old easement area | |
| Tillable land | |
| 4 acres × $400 per acre | $ 1,600 |
| Woods and wasteland | |
| 37 acres × $100 per acre | $ 3,700 |
| Wetlands | |
| 14 acres × $24 per acre | $ 336 |

based on 210 acres, which is the result of rounding plaintiffs' and defendant's figures.

Bank stabilization area
8.2 acres × $125 per acre ........ $ 1,025

Total ........ $109,421

After fair market value
Unencumbered land
39.5 acres × $500 ........ $ 19,750
Old easement area
Tillable area
4 acres × $400 per acre ........ $ 1,600
Woods and wasteland
37 acres × $100 per acre ........ $ 3,700
Wetland
14 acres × $24 per acre ........ $ 336
Bank stabilization area
8.2 acres × $125 per acre ........ $ 1,025
Encumbered land
107.5 acres × $400 per acre ........ $ 43,000

Total ........ $ 69,411

Just compensation: $109,421 − $69,411 = $40,010 (rounded to $40,000)

### Henry Tract

Before fair market value:
North tract
Tillable land
210 acres × $700 ........ $147,000
Woods, waste and roads
65 acres × $100 ........ $ 6,500

South tract
Tillable land
140 acres × $700 ........ $ 98,000
Woods, waste and roads
17 acres × $100 ........ $ 1,700
Headquarters site
3 acres × $700 ........ $ 2,100

Total ........ $255,300

After fair market value
North tract
Unencumbered land
40.3 acres × $700 ........ $ 28,210
Woods, waste and roads
65 acres × $100 ........ $ 6,500
New easement area
169.7 acres × $350 ........ $ 59,395

South tract
Headquarters site
3 acres × $700 ........ $ 2,100
Woods, waste and roads
17 acres × $100 ........ $ 1,700
Unencumbered land
140 acres × $700 ........ $ 98,000

Total ........ $195,905

Just compensation: $255,300 − $195,905 = $59,395 (rounded to $59,000)

### Growing Crops

Plaintiffs also seek damages for the value of their destroyed crops. Defendant maintains plaintiffs should not recover because there was no evidence presented as to whether the crop damage resulted from the November 1, 1973 taking and because the evidence of the damage is insufficient.

■ Plaintiffs may recover as a separate element of damages the value of mature crops ready for harvest at the date of the taking. *Barnes v. United States*, 210 Ct.Cl. 467, 482, 538 F.2d 865, 874 (1976); *King v. United States*, 205 Ct.Cl. 512, 519, 504 F.2d 1138, 1142 (1974). Plaintiffs presented evidence that the crops were lost as a result of the November 1973 flood. Plaintiffs also presented evidence of the kinds of crops on the properties, the prevailing prices for the crops and the expenses of harvesting the crops. The testimony is reasonable and without any evidence to the contrary by the defendant, the proof stands.

### Interest and Attorneys' Fees

■ An award of "just compensation" under the Fifth Amendment entitles the property owner to interest from the date of the taking to the date of payment. *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947); *Miller v. United States*, 223 Ct.Cl. 352, 399, 620 F.2d 812, 837 (1980); *Jones v. United States*, 3 Cl.Ct. 4, 7 (1983); *Hedstrom Lumber Co. v. United States*, 7 Cl.Ct. 16, 33 (1984). This court's predecessor court, the United States Court of Claims, adopted a 7.5 percent simple interest rate for the years 1971 through 1975 and an 8.5 percent simple interest rate for the years 1976 through 1979. *Miller v. United States*, 223 Ct.Cl. 352, 406, 620 F.2d 812, 841 (1980). These rates have been applied for these years by the Claims Court. *See Jones v. United States*, 3 Cl.Ct. 4, 7 (1983); *Foster v. United States*, 3 Cl.Ct. 738, 745 (1983); *Cloverport Sand & Gravel Co. v. United States*, 6 Cl.Ct. 178, 203 (1984); *Hedstrom Lumber Co., v. United States*, 7 Cl.Ct. 16, 33 (1984). In

accordance with past practice of this court, the interest rate for the period beginning January 1, 1980 shall be based upon the rate established by the Secretary of the Treasury pursuant to Pub.L. No. 92–41 (85 Stat. 97). *See Jones v. United States*, 3 Cl.Ct. 4, 7 (1983); *Foster v. United States*, 3 Cl.Ct. 738, 745 (1983); *Branning v. United States*, 6 Cl.Ct. 618, 630 (1984); *Hedstrom Lumber Co. v. United States*, 7 Cl.Ct. 16, 33 (1984). This standard is set forth in the Contract Disputes Act, 41 U.S.C. §§ 601–613 and is sued for interest awards in contract cases. "This method of establishing interest rates has the approval of Congress. * * * Little justification is seen for utilization of another method to establish the rate that is to be included in just compensation in a taking case." *Jones v. United States*, 3 Cl.Ct. 4, 7 (1984); *Foster v. United States*, 3 Cl.Ct. 738, 745 (1984). These rates are:

| | |
|---|---|
| Jan.-June 1980 | 12¼ percent |
| July-Dec. 1980 | 10½ percent |
| Jan.-June 1981 | 14⅝ percent |
| July-Dec. 1981 | 14⅞ percent |
| Jan.-June 1982 | 14¾ percent |
| July-Dec. 1982 | 15½ percent |
| Jan.-June 1983 | 11¼ percent |
| July-Dec. 1983 | 11½ percent |
| Jan.-June 1984 | 12⅜ percent |
| July-Dec. 1984 | 14⅜ percent |
| Jan.-June 1985 | 12½ percent |
| July-Dec. 1985 | 10⅜ percent |

Pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654(c), plaintiffs may be entitled to litigation expenses, including reimbursement for reasonable attorney and appraisal fees.

Plaintiffs may file an application for litigation expenses, with supporting itemized accounts, within 30 days after the date of this opinion. Defendant may file a response 28 days after plaintiffs' application is filed, to which plaintiffs may reply in 14 days.

### Conclusion

Following the submission of plaintiff's litigation expense data, or the expiration of the time allowed without any such submis-sion, a final judgment shall be entered incorporating the taking amounts established herein as follows (in total):

(1) Plaintiff Robertson shall receive $40,000 in land compensation, $17,500 in compensation for crops, and simple interest on these amounts computed in accordance with the above stated rates;

(2) Plaintiff Henry shall receive $59,000 in land compensation, $38,480 in compensation for crops, and simple interest on these amounts computed in accordance with the above stated rates.