BISSELL, Circuit Judge.
 

 J.R. Cooper appeals from the judgment of the United States Claims Court, 11 Cl.Ct. 471 (1987), dismissing Cooper’s complaint against the United States for compensation for the destruction of timber located on his property. We reverse and remand.
 

 BACKGROUND
 

 During 1979, construction on the Tennessee-Tombigbee Waterway blocked the east fork of the Tombigbee River adjacent to the Cooper farm in Itawamba County, Mississippi. The blockage caused unusual flooding of a two hundred acre section of bottom land of the Cooper farm. The United States Army Corps of Engineers attempted to remove the blockage in 1980, but was unable to do so until 1984. As a result of the blockage, the timbered area of the bottom land was subjected to standing flood water for long periods of time during the spring and summer growing seasons of the 1979-84 period. Thus, the timber in the bottom land became stressed, and some trees began to die, as early as 1979. As of the end of 1979, the number of dead trees, scattered throughout the approximately
 
 *763
 
 two hundred acres of timber land, covered the equivalent of approximately two acres of dead trees. By August 20,1980, approximately ten percent of the trees in the timbered area were dead, and more than fifty percent of the trees in the area were damaged. By September 2, 1984, the dead timber represented the equivalent of approximately seventy-five acres of dead trees. If the clogged condition of the river had continued after 1984, further damage to and destruction of timber in the bottom land would have continued after 1984. Since the removal of the obstruction from the river sometime during the year 1984, the Cooper farm has not been subjected to unusual flooding. 11 Cl.Ct. at 474.
 

 On October 5, 1982, S.K. Cooper deeded the Cooper farm to his nephew J.R. Cooper, reserving a life estate in the farm. S.K. Cooper died on December 25, 1982. J.R. Cooper filed suit against the United States on December 20, 1984, seeking compensation for the timber destroyed by the flooding.
 

 In its opinion, the trial court explained that it viewed the taking at issue, not as a taking of trees, but as a taking of a temporary flowage easement. The flowage easement was taken in 1979, when the flooding began. Although the value of the trees would ordinarily be a proper element of compensation for the taking of the flowage easement, the court reasoned that, because J.R. Cooper did not own the property in 1979, he was not entitled to compensation.
 

 We review Claims Court decisions for errors of law and clearly erroneous findings of fact.
 
 Milmark Services, Inc. v. United States,
 
 731 F.2d 855, 857 (Fed.Cir.1984).
 

 ISSUES
 

 1. Did the trial court err in construing the complaint as stating a claim for the taking of a flowage easement instead of a claim for the taking of timber?
 

 2. Did the trial court err in determining when the taking occurred?
 

 3. Did the trial court err in concluding that J.R. Cooper had no property interest in the property taken?
 

 OPINION
 

 To resolve this case, we must answer three questions: what was taken? when was it taken? and from whom was it taken? The trial court’s judgment, as explained in its opinion, is consistent with precedent dealing with takings of flowage easements. We think that, although the government may have taken a flowage easement, the plaintiff does not seek compensation for it. Therefore, this case is not controlled by the cases cited by the trial court dealing with flowage easements.
 

 J.R. Cooper claims compensation for the destruction of timber caused by flooding. As he states in his complaint: “The destruction of plaintiff’s valuable timberland constitutes a taking of private property for public use.” He does not claim compensation for a flowage easement taken by the government, nor is his claim to compensation for the timber predicated on a taking of a flowage easement. It is undisputed that timber was destroyed. Numerous cases hold that the destruction of a property interest is a compensable taking within the meaning of the Fifth Amendment.
 
 E.g., Murray v. United States,
 
 817 F.2d 1580, 1583 (Fed.Cir.1987); accord
 
 United States v. Virginia Elec. & Power Co.,
 
 365 U.S. 624, 627, 81 S.Ct. 784, 787, 5 L.Ed.2d 838 (1961);
 
 Armstrong v. United States,
 
 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554 (1960);
 
 General Box Co. v. United States,
 
 351 U.S. 159, 164 n. 14, 76 S.Ct. 728, 732 n. 14, 100 L.Ed. 1055 (1956). In addition, damages may be awarded under the Fifth Amendment for injuries from a temporary taking where the same injuries would not be compensable if a permanent taking occurred.
 
 Kimball Laundry Co. v. United States,
 
 338 U.S. 1, 15, 69 S.Ct. 1434, 1442, 93 L.Ed. 1765 (1949) (going concern value compensable in a temporary taking while not compensable in a permanent taking). Thus, we hold that the taking under consideration is a taking of
 
 *764
 
 timber and that the trial court clearly erred by finding otherwise.
 

 We next consider when the taking of timber occurred. In
 
 United States v. Dickinson,
 
 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), the Court considered when a taking of property by permanent flooding occurred. In
 
 Dickinson,
 
 a dam began impounding water in 1936. The water level submerged the property in 1937. Dickinson acquired the property after 1937. The water level rose to its high point in 1938. Dickinson sued for compensation in 1943. The government argued that the taking occurred when the dam began to impound water, or, in the alternative, when the flood waters first submerged Dickinson’s property. Under the first view, Dickinson’s suit would have been barred by the six-year statute of limitations. Under the second view, Dickinson’s suit would have been barred because he did not acquire the property until after the taking occurred.
 

 The Court stated that when a taking is caused by a continuous process, it is not complete, for purposes of determining when the claim arose, “until the situation becomes stabilized.”
 
 Id.
 
 at 749, 67 S.Ct. at 1385. As the Court held: “[W]hen the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really ‘taken.’ ”
 
 Id.
 
 In
 
 Dickinson,
 
 the critical question was: when did the flooding become sufficiently stabilized so that the property owner could determine what land was taken by the flowage easement? In this case, the critical question is: when did the destruction of trees become sufficiently stabilized so that the owner could determine the amount of timber taken? Although the operative force, flood water, was the same in both cases, it operates differently, and at different times, to cause a taking of land by inundation, or a taking of timber by suffocation. The point at which the taking becomes sufficiently certain to give rise to a claim for compensation varies in each case. As the court said in
 
 Barnes v. United States,
 
 538 F.2d 865, 873, 210 Ct.Cl. 467 (1976), this determination is in the nature of a jury verdict. In this case, the trees on the Cooper farm began to die in 1979, but the extent of the destruction was not ascertainable until 1984, when J.R. Cooper filed suit. 11 Cl.Ct. at 474.
 

 Finally, we consider who owned the timber when it was taken. As in
 
 Dickinson,
 
 J.R. Cooper did not acquire legal title to the Cooper farm until after the physical events causing the taking began. That, however, is no impediment to recovery, because the destruction of the trees did not stabilize sufficiently for J.R. Cooper to ascertain proper compensation until after he acquired legal title to the property. It is clear that J.R. Cooper had a property interest in the timber when the taking of the timber became complete. Consequently, he is entitled to compensation for the value of the timber destroyed.
 

 For the reasons stated, we remand to the trial court to determine the compensation due and enter judgment consistent with this opinion.
 

 REVERSED AND REMANDED.