**Neal TURNER, Jimmy Crane, Johnny Crane and Edwin Jerry Wilburn, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 111–88–L.**

United States Claims Court.

Aug. 24, 1989.

Michael P. Mills, Aberdeen, Miss., for plaintiffs.

Glen R. Goodsell, Washington, D.C., for defendant.

OPINION and ORDER

TURNER, Judge.

Plaintiffs, the present and former owners of riparian farmland, seek compensation under the Fifth Amendment[1] for damages resulting from the flooding of their property. Defendant has filed a motion for summary judgment. Because plaintiffs' suit lacks essential elements of a flood-related taking claim, it is concluded that defendant's motion should be granted.

I

Plaintiffs' lands are situated in Itawamba County, Mississippi. A creek known as the Twenty Mile Channel flows in a southeasterly direction through the plaintiffs' lands and empties into the Tombigbee River at a point adjacent to their property. The Tombigbee River is part of the Tennessee–Tombigbee Waterway System which was developed by the United States Army Corps of Engineers for drainage, recreational and navigational purposes.

In 1966, the lower 11.7 miles of the Twenty Mile Channel, which include the portion flowing through plaintiffs' lands, were straightened and dredged by the Corps of Engineers for flood-control purposes under the Flood Control Act of 1958. In January 1967, the Corps transferred responsibility for the operation and maintenance of this portion of the creek to the Tombigbee River Valley Water Management District, a local authority.

Plaintiffs assert that despite the 1967 transfer of responsibility, the Corps (1) continued to exercise authority over the lower reaches of the Twenty Mile Channel after 1967, and (2) undertook additional construction work on that creek, as well as on the Tennessee–Tombigbee Waterway, in the early 1980's. Plaintiffs further allege that this construction work had the effect of increasing the velocity, volume and force of the water flow in the Twenty Mile Channel, which, in turn, broke certain spoil mounds located on or adjacent to plaintiffs' lands in

---

1. "[N]or shall private property be taken [by the United States] for public use, without just compensation." U.S. CONST. amend. V.

December 1982, resulting in the flooding of plaintiffs' lands. Plaintiffs add that additional flooding attributable to the same causes occurred in the Fall of 1983. For purposes of ruling on the instant motion, we shall deem these assertions, though contested, to be true.

The flood damage to plaintiffs' lands became stabilized several months after the Fall 1983 flooding. Pl. Opp. at 9. When the waters receded, the legacy of the 1982 and 1983 floods was exposed: they had deposited sand and silt on 252 acres of plaintiffs' lands and had left behind a lake covering another 250 acres. More than 500 acres of once-valuable farmland was thus rendered valueless.

Neither the Corps of Engineers nor any other governmental agency ever acquired flowage easements over plaintiffs' lands. As a result of the damages of the 1982 and 1983 floods, plaintiff Neal Turner, then-owner of the lands, was unable to farm them and subsequently lost title to the lands through foreclosure.

In their prayer for relief, plaintiffs seek damages in the amount of $411,175 for decrease in the fair market value of their property. They also seek damages for the loss of crops since 1982, as well as reasonable attorneys' fees.

## II

In its motion for summary judgment, defendant urges that 33 U.S.C. § 702c renders the government immune from any claims, including Fifth Amendment claims, related to a federal flood control project. Defendant further asserts that the return of the Twenty Mile Channel's lower portion to local control absolves the United States of any liability for the flood damage here complained of, since government liability under the Fifth Amendment can result only from acts of the United States, not from acts of others. Defendant also contends that plaintiffs' action is time-barred, since the Corps of Engineers' construction work which allegedly caused the flood damage

was performed more than six years prior to the filing of this action. Finally, defendant urges that plaintiffs' claims are merely for consequential damages, which cannot be recovered under the Fifth Amendment.

In opposing defendant's motion, plaintiffs argue that the immunity conferred by 33 U.S.C. § 702c applies only to pure flood-control projects, and not to multi-purpose projects such as that involved here. Plaintiffs further argue that their action is not time-barred since the statute of limitations begins to run against a flood taking claim only when the damage situation becomes stabilized, not when the government originally takes actions that later result in flooding. Finally, plaintiffs urge that there exist genuine issues of material fact that require a trial on the merits, including the questions (1) whether the flooding was caused by actions of defendant and (2) whether defendant continued to control operations of the Twenty Mile Channel's lower portion after 1967.

## III

### A

■ Defendant's contention that 33 U.S.C. § 702c renders the United States immune from any Fifth Amendment taking claim arising from federal flood control projects is without merit.[2] It has long been established that when Congress exercises powers conferred upon it by the Constitution, as it did when enacting § 702c, "it must proceed subject to the limitations imposed by th[e] Fifth Amendment, and can take [property] only on payment of just compensation." *Monogahela Navigation Co. v. United States*, 148 U.S. 312, 336, 13 S.Ct. 622, 630, 37 L.Ed. 463 (1893). Congress' power to establish flood-control projects derives from the commerce clause of the Constitution. *United States v. Lynah*, 188 U.S. 445, 471, 23 S.Ct. 349, 357, 47 L.Ed. 539 (1903). The Supreme Court stated long ago that "in its exercise of the power to regulate commerce, Congress

---

2. *Baird v. United States*, 5 Cl.Ct. 324, 332 n. 5 (1984); *Berenholz v. United States*, 1 Cl.Ct. 620, 628 n. 1 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.1983).

may not override the provision that just compensation must be made when private property is taken for public use." *Scranton v. Wheeler*, 179 U.S. 141, 153, 21 S.Ct. 48, 53, 45 L.Ed. 126 (1900). Accordingly, the immunity provision in 33 U.S.C. § 702c does not extend to Fifth Amendment claims.[3]

B

Defendant's assertion that plaintiffs' claims are time-barred is likewise rejected. This court's statute of limitations, 28 U.S.C. § 2501, does not begin to run against a taking claim until the date of the taking. *Cooper v. United States*, 827 F.2d 762, 764 (Fed.Cir.1987); *Nitol v. United States*, 7 Cl.Ct. 405, 412–13 (1985). In a taking-by-flooding case, the taking does not occur " 'until the situation becomes stabilized.' " *Cooper*, 827 F.2d at 764, *quoting United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). In the instant case, plaintiffs allege that the flood damage situation did not become stabilized "until several months after the Fall of 1983." Pl. Opp. at 9. This action was filed in February 1988, well within the six-year period prescribed by statute. 28 U.S.C. § 2501.

C

Nevertheless, plaintiffs' suit cannot escape summary disposition if it lacks essential elements of a taking claim. *Hartwig v. United States*, 202 Ct.Cl. 801, 810, 485 F.2d 615, 620 (1973). In Fifth Amendment taking jurisprudence, "a distinction has been made between damage and a tak-

ing, and that distinction must be observed in applying the constitutional provision." *Bedford v. United States*, 192 U.S. 217, 224, 24 S.Ct. 238, 240, 48 L.Ed. 414 (1904). The key difference between a flood damage claim, which sounds in tort[4] and thus falls outside this court's jurisdiction, and a flood taking claim is that in the latter "a servitude must have been imposed upon the land, that is to say, a subjection of the land for a more or less definite time to a use inconsistent with the rights of the owner." *North Counties Hydro–Electric Co. v. United States*, 108 Ct.Cl. 470, 485, 70 F.Supp. 900, 903 (1947).

This "servitude" and "subjection" of the land due to flooding, *Id.*, can be shown in but two ways: either the land must be permanently flooded, *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 181, 20 L.Ed. 557 (1871); *Fromme v. United States*, 188 Ct.Cl. 1112, 1118, 412 F.2d 1192, 1196 (1969); *National By–Products, Inc. v. United States*, 186 Ct.Cl. 546, 576, 405 F.2d 1256, 1273 (1969); *Gasser v. United States*, 14 Cl.Ct. 476, 496 (1988); *Berenholz v. United States*, 1 Cl.Ct. 620, 626 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.1983), or it must be subject to frequent and inevitably recurring overflows. *United States v. Cress*, 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917); *Accardi v. United States*, 220 Ct.Cl. 347, 357, 599 F.2d 423, 429 (1979); *Barnes v. United States*, 210 Ct.Cl. 467, 474, 538 F.2d 865, 870 (1976); *Hartwig*, 202 Ct.Cl. at 809, 485 F.2d at 620; *National By–Products*, 186 Ct.Cl. at 576, 405 F.2d at 1273; *B Amusement Co. v. United States*, 148 Ct.Cl. 337, 342, 180

3. The cases cited by defendant do not support its comprehensive immunity argument, as they were tort cases and not Fifth Amendment taking cases: *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); *Morici Corp. v. United States*, 681 F.2d 645 (9th Cir.1982); *Aetna Ins. Co. v. United States*, 628 F.2d 1201 (9th Cir.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1732, 68 L.Ed.2d 220 (1981); *Taylor v. United States*, 590 F.2d 263, 265 n. 2 (8th Cir. 1979) (original complaint sought recovery under both tort and taking theories, but complaint was amended to state only tort claim); *Florida East Coast Ry. v. United States*, 519 F.2d 1184 (5th Cir.1975).

4. The Claims Court has no jurisdiction over cases sounding in tort. 28 U.S.C. § 1491(a)(1); *Smithson v. United States*, 847 F.2d 791, 795 (Fed.Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

Although when appropriate this court can transfer tort cases to the district courts under 28 U.S.C. § 1631, neither party to this action has requested such transfer. In any event, it appears doubtful that plaintiffs could succeed in a district court tort action arising from a federal flood control project because of the government immunity conferred by 33 U.S.C. § 702c. *See Singleton v. United States*, 6 Cl.Ct. 156, 168 (1984) and cases therein cited.

F.Supp. 386, 389 (1960); *Gasser*, 14 Cl.Ct. at 496; *Herriman v. United States*, 8 Cl.Ct. 411, 417 (1985).

The showing of either permanent or inevitably-recurring flooding is necessary because of taking claims' intent element. As the Court of Claims observed: "To constitute a taking there must be an intent on the part of the United States to take plaintiffs' properties, or, at least, an intention to do an act the natural consequences of which was to take the property." *B Amusement Co.*, 148 Ct.Cl. at 341, 180 F.Supp. at 389; *accord Barnes*, 210 Ct.Cl. at 476, 538 F.2d at 871. Where actions of the government result in flooding that is either permanent or inevitably-recurring, the requisite intent may be implied. *Berenholz*, 1 Cl.Ct. at 628, *citing Columbia Basin Orchard v. United States*, 132 Ct.Cl. 445, 450, 132 F.Supp. 707, 709 (1955).

In this case, plaintiffs do not allege that the flooding which damaged their lands in December 1982 and Fall 1983 will inevitably recur. Even if the court assumes, as it does, that plaintiffs could show the other elements of a flood-related taking,[5] their failure to allege inevitably recurring inundation serves as an "insurmountable obstacle" to the survival of their suit. *Hartwig*, 202 Ct.Cl. at 810, 485 F.2d at 620.

■ Careful examination of plaintiffs' complaint, opposition to the instant motion and supporting affidavits has yielded the conclusion that the flooding for which plaintiffs seek relief occurred only in 1982 and 1983. In their opposition, plaintiffs state: "The acts upon which this claim is founded occurred in December of 1982 and the Fall of 1983." Pl.Opp. at 8. They state, further, that the damage situation "stabilized" after the Fall 1983 flooding. Pl.Opp. at 9. The affidavits of Messrs. Wilburn and Jaynes appended to plaintiffs' opposition also make clear that this action concerns only the 1982 and 1983 flooding. Pl.App. at 8, 11. This court has observed:

It is settled that a single flood does not, *B Amusement Co. v. United States*, 148 Ct.Cl. 337, 341–42, 180 F.Supp. 386, 389 (1960), nor indeed one, two or three floods by themselves do not, *National By–Products, Inc. v. United States*, 186 Ct.Cl. 546, 576, 405 F.2d 1256, 1273 (1969), constitute a taking.

*Singleton v. United States*, 6 Cl.Ct. 156, 163 (1984).

Nor could the 1982 and 1983 floods' creation of 250–acre lake on plaintiffs' property be deemed to constitute the "permanent flooding" contemplated by the cases cited above. Although a "permanent overflow" of water could constitute a taking, *Berenholz*, 1 Cl.Ct. at 626, the invasive character of water that is simply *left behind* on the land is no different from that of sand and silt left behind on the land. Absent inevitable recurrence, both would constitute "an essentially tortious injury." *Hartwig*, 202 Ct.Cl. at 810, 485 F.2d at 620. There would be no taking, "even if there is permanent damage to property partially attributable to Government activity." *Berenholz*, 1 Cl.Ct. at 626. As the Court of Claims stated:

Without th[e] essential element [of inevitably recurring flooding], the court has no choice but to find that the plaintiffs have at best presented a case of consequential injury due to governmental action, which would be an essentially tortious injury. Such a conclusion necessitates the granting of the defendant's motion for summary judgment.

*Hartwig*, 202 Ct.Cl. at 810, 485 F.2d at 620.

■ Plaintiffs protest that a recent Federal Circuit case, *Cooper v. United States*, 827 F.2d 762 (Fed.Cir.1987), dictates that their action should survive the instant motion. In *Cooper*, the Federal Circuit found that the trial court had improperly applied the law of flowage easements to plaintiff's flood-based taking claim because plaintiff

---

5. *E.g.*, that the flooding was caused by governmental action, *Bartz v. United States*, 224 Ct.Cl. 583, 593, 633 F.2d 571, 577 (1980), was productive of substantial damage, *United States v. Cress*, 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917), and that the governmental

activities causing the flooding did not actually benefit plaintiffs more than they injured them. *United States v. Sponenbarger*, 308 U.S. 256, 266–67, 60 S.Ct. 225, 229, 84 L.Ed. 230 (1939). *See Gasser v. United States*, 14 Cl.Ct. 476, 496–97 (1988) and cases therein cited.

was seeking compensation for flood damage to personalty (mature timber), not realty. *Cooper*, 827 F.2d at 763.

In this case, by contrast, plaintiffs' complaint cannot be read as stating a claim for the taking of personalty. Although plaintiffs' prayer for relief includes a request for "damages for the loss of crops for the crop year 1982 and all years subsequent thereto," Complaint at 5, it is well-settled that only mature crops are considered personalty—"a growing but immature crop cannot be valued separately from the value of the realty itself." *Barnes*, 210 Ct.Cl. at 482, 538 F.2d at 874. Accordingly, compensation for the value of such crops "may be subsumed within the compensation for the flowage easement." *King v. United States*, 205 Ct.Cl. 512, 519, 504 F.2d 1138, 1142 (1974); *see also Henry v. United States*, 8 Cl.Ct. 389, 393 (1985). Plaintiffs do not allege that any of the crops for which they seek compensation were mature crops. Accordingly, in this case it is proper to apply the law of flowage easements.

Finally, plaintiffs cite *Amick v. United States*, 5 Cl.Ct. 426 (1984), as a case "directly on point" that entitles them to recover. Pl.Opp. at 10. *Amick* was a congressional reference case, in which the court specifically held that there was "no possibility of plaintiffs' recovering under any legal theory." *Amick*, 5 Cl.Ct. at 430. The court went on to recommend that the United States make recompense out of "fairness and good conscience." *Amick*, 5 Cl.Ct. at 431. This court has power to make such determinations in a congressional reference case. However, given the present posture of the case, we must confine ourselves to available legal theories under which, as stated above, plaintiffs cannot prevail.

### IV

Defendant's motion for summary judgment is GRANTED. Judgment for defendant shall be entered accordingly.