Neal **TURNER**, Jimmy Crane, Johnny Crane, and Edwin Jerry Wilburn, Plaintiffs–Appellants,

v.

The **UNITED STATES**, Defendant–Appellee.

No. 90–5008.

United States Court of Appeals, Federal Circuit.

April 13, 1990.

Michael P. Mills, of Navarro, Mills & Davis, Aberdeen, Miss., argued, for plaintiffs-appellants.

Andrew C. Mergen, of the Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief were Richard B. Stewart, Asst. Atty. Gen., Jacques B. Gelin and Glen R. Goodsell.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and SHARP, Chief District Judge.*

BENNETT, Senior Circuit Judge.

This appeal is from the August 24, 1989, order of the United States Claims Court granting summary judgment for the defendant. 17 Cl.Ct. 832 (1989). We reverse and remand.

## BACKGROUND

The appellants (collectively "Turner" or "plaintiffs") filed suit in the Claims Court seeking just compensation under the Fifth Amendment for flooding that occurred to their property. The plaintiffs' property is located in Mississippi along a creek known as the Twenty Mile Channel. The creek empties into the Tombigbee River at a point adjacent to their property. The Tombigbee River is part of the navigable Tennessee–Tombigbee Waterway System, which was developed by the United States Army Corps of Engineers.

In 1966, a section of the Twenty Mile Channel, including the portion flowing by Turner's property, was straightened and dredged by the Corps for flood control purposes. In January 1967, the Corps transferred responsibility for the operation and maintenance of that section of the creek to a local authority, the Tombigbee River Valley Water Management District.

In the Claims Court, the plaintiffs asserted that despite the transfer of authority to the local management district, the Corps continued to exercise authority over the lower part of the Twenty Mile Channel. They alleged that in the early 1980's, the Corps undertook additional construction work on the creek, as well as on the Tennessee–Tombigbee Waterway. The plaintiffs alleged that as a result of that additional construction, the velocity, volume and force of the water flow in the Twenty Mile Channel increased and it broke certain protective spoil mounds located on their lands. As a result, according to the plaintiffs, approximately 252 acres of their lands were covered with one to four feet of sand and an additional 250 acres were lost due to water being backed up on their property.

The government moved for summary judgment, asserting that the Claims Court did not have jurisdiction over Turner's claim because it was barred by the statute of limitations and because Congress had not waived sovereign immunity under the immunity provisions of the Flood Control Act of 1928 (33 U.S.C. § 702c (1982)). Finally, the government asserted that the

---

* Allen Sharp, Chief Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

complaint failed to state a claim upon which relief may be granted.

The government's memorandum before the trial court in support of summary judgment was primarily devoted to a discussion of the Flood Control Act of 1928 and its assertion that under that statute Congress has not waived sovereign immunity of the United States for claims for flood damages asserted under the Fifth Amendment. The memorandum included a paragraph arguing that the plaintiffs had failed to state a claim because all responsibility for maintaining the creek was turned over to the local water authority. The paragraph concluded with the statement: "Moreover, at most plaintiffs' flood damage claims are merely consequential for which there may be no recovery under the Fifth Amendment. *See Hartwig v. United States*, 202 Ct.Cl. 801, 485 F.2d 615, 619–20 (1973)." Finally, the government argued that the claims were barred by the six-year statute of limitations.

The Claims Court granted summary judgment. The court first held the government's immunity argument was without merit because the immunity provision in 33 U.S.C. § 702c does not extend to Fifth Amendment claims. The court also rejected the government's statute of limitations argument. The plaintiffs had alleged that the flood damage situation became stabilized after the flood in the fall of 1983. The court found no fault with this. Since the claim was filed in February 1988 the court held that this was well within the six-year statutory limitations period. Nevertheless, the Claims Court granted summary judgment because Turner's suit lacked essential elements of a takings claim. The court held that an examination of the plaintiffs' submissions showed that the flooding for which the plaintiffs sought relief occurred only in 1982 and 1983. The court held that the evidence failed to show either permanent or inevitably recurring flooding and thus the plaintiffs had not established one of the elements essential to their takings claim. The plaintiffs have appealed the grant of summary judgment on the permanency issue. The government has not raised on appeal the rejection of

the other grounds for its motion, so we do not address them in this opinion.

## OPINION

We review the grant of summary judgment motions by the Claims Court *de novo. Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir. 1987). In considering a motion for summary judgment, all justifiable inferences are to be drawn from the underlying facts in favor of the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The Supreme Court has stated that "[p]roperty is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time." *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789 (1947). *See also North Counties Hydroelectric Co. v. United States*, 108 Ct.Cl. 470, 485, 70 F.Supp. 900, 903 (1947). As the Claims Court fully explained in its opinion in the present case, to show a servitude has been imposed through a taking by flooding, a plaintiff must prove that the land is subject to permanent or inevitably recurring floods. *See Hartwig v. United States*, 202 Ct.Cl. 801, 485 F.2d 615, 620 (1973). According to the Claims Court, evidence of that element of the plaintiffs' claim is missing from the plaintiffs' submissions. It is clear that the declarations submitted by the plaintiffs in opposition to the motion for summary judgment did not directly address whether the flooding was permanent or inevitably recurring. However, it is also clear from the government's motion that the government was not seeking summary judgment on the basis of the lack of evidence on that issue. Rather, the government's motion was directed to the issues of immunity, limitations, and that the government had no authority over the waterway. The government's allegation that the flood damage claims are merely consequential, as quoted above, appears as

an afterthought in its argument for no liability. The government did not otherwise address that contention.

In order to obtain summary judgment on the issue of whether the flooding was permanent, the government need not have produced evidence showing the absence of a genuine issue. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). As the Supreme Court explained, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* The Court also stated that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552.

It is apparent from the government's motion papers that it did not attempt to "point out" to the Claims Court or to Turner the alleged absence of evidence on the issue of whether the flooding was permanent or inevitably recurring. The principal bases for its motion were immunity and limitations. Turner had no reason to respond or to obtain affidavit evidence concerning a matter not raised by the government's summary judgment motion.

Examination of all the evidence, including that submitted by the government, shows that a reasonable inference can be drawn that the flooding is permanent or inevitably recurring, but that is not the same as a finding of fact based on credible, substantial evidence. Only the trial court can make such a finding and here it has not. The government submitted the declaration of Doug Otto, a hydraulic engineer with the Corps of Engineers, in support of its motion. Mr. Otto's declaration did not directly address the permanency of the flooding. His conclusion was that a natural outlet on Turner's tract had been plugged and a new drainage ditch dug. According to Mr. Otto, that action resulted in the local drainage being diverted "creating an area of water ponding." Mr. Otto also stated that

> during a flood event, Twenty Mile Creek *now* can no longer back onto Mr. Turner's property as once occurred as a natural event due to the blocked drainage outlet on Tract One. *This creates a potentially destructive situation.* As Twenty Mile Creek rises rapidly due to basin flooding, the flood flows are artificially held in the channel in this reach until the spoil mounds which flank the creek are overtopped or breached. Prior to the blocked outlet, the flood waters entered Mr. Turner's property thru [sic] the drainage outlet and *the present predicament* was avoided.

(Emphasis added.) Mr. Otto opined that the drainage outlet was plugged at the direction of someone other than the Corps to prevent sand deposition and periodic flooding and that "this attempt to alleviate a relatively small problem *has created a severe problem* on the two tracts of land." (Emphasis added.) Mr. Otto's declaration appears to show that a flood problem exists on the Turner land, that it is "potentially destructive," and that it is a "present predicament." An inference can be drawn from Mr. Otto's statements that the plaintiffs' flooding problem is continuing and inevitably recurring but not necessarily the fault of the government.

The plaintiffs submitted an appraiser's report that states "[a]s a result of siltation resulting from *periodic overflows* as a result of breaks in the 20 Mile Canal Levy [sic], sand has washed into the tract at an average depth of approximately 6 inches and changed the soil type and ecology." (Emphasis added.) That statement as well creates the inference that the flooding may be periodic, inevitable and perhaps permanent.

The evidence before the Claims Court indicated that Turner's land had long been subject to annual overflows, but the flooding did not affect the agricultural use of the land. From the declarations and evi-

dence submitted by both parties, an inference can be drawn that the Corps' construction work altered the drainage characteristics of the Twenty Mile Channel and Turner's land, rendering the land useless for agricultural purposes, and that the flooding for which the plaintiffs seek compensation is either permanent or inevitably recurring. However, whether the flooding is in fact permanent or inevitably recurring is still an unresolved issue of fact, as is the issue of whether the flooding is the result of a government taking. We hold only that on the present record, summary judgment is inappropriate. The judgment of the Claims Court is reversed and the case is remanded for further proceedings.

## COSTS

Each party shall bear its own costs.

REVERSED AND REMANDED.