**AETNA INSURANCE COMPANY et al.,**
**Plaintiffs-Appellees,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 79–7219.**

United States Court of Appeals,
Ninth Circuit.

Aug. 14, 1980

Rehearing Denied Oct. 14, 1980.

Ronald R. Glancz, John F. Cordes (argued), Washington, D.C., on brief, for defendant-appellant.

Terry L. Crapo, Idaho Falls, Idaho, for plaintiffs-appellees.

Before TANG, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an action by insurance companies against the United States Government to recover more than $7,000,000 in claims paid to insureds as a result of the 1976 collapse of the Teton Dam. The sole issue presented in this interlocutory appeal is whether the suit is barred by the provisions of 33 U.S.C. § 702c, which immunizes the United States from liability for flood damage related to flood control projects. The district court certified this appeal from its order denying the Government's motion to dismiss. We accepted the appeal and now hold that the district court's order must be reversed because the United States is immune.

Congress authorized the construction of the Teton Dam in 1964 in the wake of serious flooding which occurred in 1962. The dam was part of the Bureau of Recla-

mation's Teton Basin Project authorized by Pub.L. No. 88–583, 78 Stat. 925 (1964), 43 U.S.C. §§ 616nn–616rr.[1] The enabling legislation's preamble stated multiple purposes for the project which did not expressly include flood control. However, the legislative history of the Act makes it clear that the project was at least in part intended to prevent the type of floods which had occurred in 1962. The project came to a tragic end, however, on June 5, 1976, when the partially completed dam collapsed, causing severe flooding and great damage in Idaho's Teton Basin.

Congress responded by enacting the Teton Dam Disaster Assistance Act of 1976. Pub.L. No. 94–400, 90 Stat. 1211 (1976). The Act provided direct compensation to injured parties but expressly excluded claims of insurance carriers for reimbursement of claims paid to their insureds. *Id.* § 3(d), 90 Stat. at 1211. The Act further provided that an insurer could exercise "any right of action against the United States to which it may be entitled under any other laws for payments made to [insureds] . . . ." *Id.*, § 3(f), 90 Stat. at 1212. *See also id.*, § 9(c), 90 Stat. at 1214.

The plaintiff insurance companies in this case acknowledge that they have no claim under the Teton Dam Disaster Assistance Act, but they do claim entitlement to recovery against the Government under another law, namely the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680. They filed this action as subrogees of their insured's claims against the Government, alleging that the Government's design and construction of the dam was negligent and that the Government's negligence caused the dam's collapse.

█ The Government argues that the complaint should be dismissed because the United States is immune from liability under 33 U.S.C. § 702c, which provides:

> No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place  .  .  . .

Despite the broad language of the immunity statute, it is by now well settled in this Circuit that the immunity statute applies only when the flood damage is caused by a project related to flood control, and that it does not apply when the flood damage is "wholly unrelated to any act of Congress authorizing expenditure of federal funds for flood control  .  .  . ." *Peterson v. United States*, 367 F.2d 271, 275 (9th Cir. 1966). *Accord Graci v. United States*, 456 F.2d 20 (5th Cir. 1971), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973). The question before us thus narrows to whether the flood damage here was related to government flood control activities so as to fall within the immunity provisions as they have been interpreted by the courts.

█ Flood control undisputably was not the exclusive purpose of the Teton Basin Project, and it may not have been a major purpose. This Court has held, however, that damage as a result of flooding from a government project fell within the immunity provision of § 702c despite the fact that the project was not exclusively devoted to flood control. *McClaskey v. United States*, 386 F.2d 807 (9th Cir. 1967). Section 702c has frequently been applied to floods stemming from multipurpose projects. *E.g., Taylor v. United States* , 590 F.2d 263 (8th Cir. 1979); *Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081 (6th Cir. 1978); *Callaway v. United States*, 568 F.2d 684 (10th Cir. 1978). Nor does it matter, as plaintiffs suggest, whether the projects are administered by the Corps of Engineers, *e.g., McClaskey v. United States, supra*, the Bureau of Reclamation, *e.g., Sanborn v. United States*, 453 F.Supp. 651 (E.D.Cal. 1977); *Hedrick v. United States*, 184 F.Supp. 927 (D.N.M. 1960), or the Department of Agriculture, *e.g., Lenoir v. Porters Creek Watershed District, supra.* The policy behind § 702c, was to permit the government to engage in a "vast construction pro-

---

1.  The statute has since been removed from the United States Code as having limited applicability.

gram . . . of dikes, dams, levees, and related works," *Peterson, supra* at 275–76. That purpose would not be furthered by limiting the immunity to single purpose flood control projects, or even to projects in which flood control is a dominant goal.

The insurers assert, however, that flood control was not at all a purpose of the Teton Basin Project. They ask us to ignore the extensive legislative history indicating that flood control was very much on the minds of the members of Congress in passing the legislation. *See, e.g.,* H.R.Rep. No. 1715, 88th Cong., 2d Sess. at 3 (1964) ("The project would also provide substantial flood protection. . . ."); S.Rep. No. 1127, 88th Cong., 2d Sess. at 3 (1964) ("The disastrous flood of February 1962 dramatically reemphasized the need for the construction proposed."). The insurers would have us focus narrowly on the purposes listed in the preamble to the Act which, for some unexplained reason, omitted flood control. The insurers' position in this regard is, however, contrary to the approach which the courts have taken in focusing, not upon the language of the legislation authorizing projects, but upon whether the project was actually intended, at least in part, to control flooding. Flood control was beyond question a purpose of the Teton Basin Project. Indeed, this Court has specifically said in another context that one of the purposes of the Teton Basin Project was flood control. *Trout Unlimited v. Morton,* 509 F.2d 1276 (9th Cir. 1974).

The insurers also argue that § 702c, which was enacted in 1928 in connection with an extensive project to control flooding on the Mississippi River, was intended to apply only to projects on that river, and that the Teton Basin Project is therefore outside its scope. This argument has been raised and rejected many times, and every court to consider the issue has held that § 702c has nationwide application. *E.g., Clark v. United States,* 218 F.2d 446 (9th Cir. 1954); *Lenoir v. Porters Creek Watershed Dist., supra,* at 1086; *National Mfg. Co. v. United States,* 210 F. 2d 263 (8th Cir.), *cert. denied,* 347 U.S. 967, 74 S.Ct. 778,

98 L.Ed. 1108 (1954). After 26 years of consistent interpretation, it would be the proper function of Congress and not this Court to narrow the scope of the immunity.

The insurers' remaining arguments focus not on the purpose of the Teton Basin Project but on the nature of the disaster which occurred. The insurers contend that the collapse of the dam with its ensuing flood damage was caused solely by government negligence unaccompanied by any unusual natural factors, and that 702c should not bar recovery in those circumstances. Its principal support for that position is dictum in *Stover v. United States,* 204 F.Supp. 477 (N.D.Cal. 1962), *aff'd,* 332 F.2d 204 (9th Cir.), *cert. denied,* 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964). In this Court's affirmance, however, we expressly disapproved the trial court's dictum that 702c would not apply to floods caused purely by negligence. The dictum has also been disapproved in other decisions. *See Burlison v. United States,* 627 F.2d 119 (8th Cir. 1980); *Lunsford v. United States,* 570 F.2d 221 (8th Cir. 1977); *Florida East Coast Railway Co. v. United States,* 519 F.2d 1184 (5th Cir. 1975); *Sanborn v. United States,* 453 F.Supp. 651 (E.D.Cal. 1977). Any flood caused by government negligence is also caused in part by the natural conditions extant at the time of the negligence: e.g., the amount of rainfall which preceded the flood and hence the amount of water being stored. To attempt to distinguish between ordinary and unusual natural conditions, as plaintiffs urge, would be a very difficult task. Such an inquiry would necessarily frustrate section 702c's purpose of permitting the government to engage in flood control without fear of liability. We agree with the Eighth Circuit that such a test would "lead the court into the morass of 'contributing causes,' 'superseding causes,' and 'intervening causes.'" *Lunsford, supra* at 228 n.13, quoting *Lunsford v. United States,* 418 F.Supp. 1045, 1054 (D.S.D. 1976). For similar reasons we reject the insurers' contention that the Teton Dam Disaster was not a "flood" within the meaning of 702c. The immunity provision is not limit-

ed to water damage attributable to a natural disaster. *See Florida East Coast Railway Co. v. United States, supra.*

[7] Plaintiffs also argue that since at the time the immunity statute was passed, some twenty years before the Federal Tort Claims Act, there was no governmental liability for negligence, the immunity statute could not have been intended to provide immunity for negligent conduct in connection with flooding. An equally compelling argument can be made, however, that given the existing broad language of the immunity provision, Congress in passing the Federal Tort Claims Act should have manifested an intent to include flood damage arising out of negligence within the scope of the Federal Tort Claims Act. The legislative history is at best equivocal [2] and the matter has been resolved for our purposes by repeated decisions of this Court which have held that 702c bars suits based on negligence. *McClaskey v. United States, supra; Stover v. United States, supra; Clark v. United States, supra.*

The order of the district court is reversed and the cause is remanded with instructions to grant the Government's motion to dismiss.

---

2. Plaintiffs rely on an explanation of the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), contained in several of the Congressional reports on the Federal Tort Claims Act. The relevant sentence is as follows:

This is a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of an authorized activity, such as flood-control or irrigation project, where no negligence on the part of any Government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious, or that the statute or regulation authorizing the project was invalid.

H.R.Rep. No. 2245, 77th Cong., 2d Sess. at 10 (1942); S.Rep. No. 1196, 77th Cong., 2d Sess. at 7 (1942); H.R.Rep. No. 1287, 79th Cong., 1st Sess. at 5–6 (1946), quoted in *Dalehite v. United States*, 346 U.S. 15, 29 n.21, 73 S.Ct. 956, 964 n.21, 94 L.Ed. 1427 (1953).

While this sentence does suggest that the Government may be liable for flood damage due to government negligence, it is merely an example, one of several in the paragraph, of the way in which the discretionary function exception is to operate. It does not expressly recognize the specific flood immunity of 33 U.S.C. § 702c.