**MORICI CORPORATION, a California corporation, Plaintiff-Appellant and Cross-Appellee,**

**v.**

**The UNITED STATES of America, Defendant-Appellee and Cross-Appellant.**

**Nos. 81–4075, 81–4080.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1982.

Decided July 15, 1982.

---

Bruce McDonough, Sacramento, Cal., argued, for Morici Corp.; Martin McDonough, McDonough, Holland & Allen, Sacramento, Cal., on brief.

Marc Johnson, Dept. of Justice, Washington, D. C., argued, for U. S.; Mary Beth Uitti, Asst. U. S. Atty., Sacramento, Cal., Robert S. Greenspan, Dept. of Justice, Washington, D. C., on brief.

Before CHOY, SNEED and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, for crop damage in excess of $1,000,000 allegedly caused by the seepage of water from the Sacramento River in early 1974. Plaintiff Morici Corporation claims that the seepage resulted from excessively high levels of water in the river due to the negligent operation of a dam and reservoir works located upstream from the plaintiff's farm. These works, constructed by the United States and operated by the Bureau of Reclamation, are a part of the water regulatory system known as the Central Valley Project.

We are again called upon to interpret 33 U.S.C. § 702c, the flood immunity provision, which provides:

> No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place . . . .

This court has recently described the scope of the provision in the following terms:

> In this circuit, the immunity statute applies only when the flood damage is caused by a project related to flood control, and does not apply when the flood damage is "wholly unrelated to any act of Congress authorizing expenditure of federal funds for flood control." *Aetna Insurance Co. v. United States*, 628 F.2d 1201, 1203 (9th Cir. 1980); *Peterson v. United States*, 367 F.2d 271, 275 (9th Cir. 1966).

*Pierce v. United States*, 650 F.2d 202, 203 (9th Cir. 1981).

These appeals are from two separate decisions of the district court. In the first, *Morici Corp. v. United States*, 491 F.Supp. 466 (E.D.Cal.1980) (*Morici I*), the district court dismissed plaintiff's original complaint, holding that the immunity provisions of § 702c apply despite the fact that the Central Valley Project has purposes in addition to flood control and despite the possibility that the seepage stemmed from operation of the project for one of those other purposes. The court also agreed with the government that its immunity from flooding was broad enough to cover seepage of flood waters underground as well as waters running over the surface. As stated by the district court, the damage was "from the presence of flood waters in the Sacramento River which derive from a federal flood control project." *Id.* at 481.

In the second decision before us, *Morici Corp. v. United States*, 500 F.Supp. 714 (E.D.Cal.1980) (*Morici II*), the same district court considered plaintiff's amended complaint. The court this time refused to dismiss the complaint in its entirety, holding that immunity would not protect the government if the plaintiff could prove its allegation that government employees caused injury "through actions . . . purposefully or knowingly taken in a manner or for a purpose not authorized by Congress." *Id.* at 724.

Morici appeals from the holding of *Morici I* and the government cross-appeals from the holding of *Morici II* upon the district court's certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Morici does not argue in this court that the waters involved were anything other than flood waters within the meaning of the statute. It does not challenge the district court's holding that, for purposes of

702c, it does not matter whether the damage was caused by seepage or by above-ground flooding. Rather, Morici contends that the damage here was not caused by the Central Valley Project's use in connection with a flood control purpose, and that therefore the 702c immunity does not apply.

 It is not disputed that if injury resulted from the operation of this federal project for flood control purposes, government immunity is complete. *See Pierce*, 650 F.2d at 203. Nor is it disputed that government immunity can apply even though this federal project has multiple purposes and is not intended exclusively for flood control. *See Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1203 (9th Cir. 1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1732, 68 L.Ed.2d 220 (1981); *Taylor v. United States*, 590 F.2d 263, 267 (8th Cir. 1979); *Callaway v. United States*, 568 F.2d 684, 687 (10th Cir. 1978). The plaintiff argues, however, for a rule that the existence of government immunity from flood damage negligently caused by the operation of a multipurpose project depends upon the particular use to which the project was being put when the negligence occurred. Plaintiff contends, in other words, that the court should trace the damage back to the source of the negligence. In plaintiff's view, if the government negligence was attributable to operation of the project for a non-flood control purpose, then no immunity attaches.

The only court that has expressly adopted that position is the Fourth Circuit. In *Hayes v. United States*, 585 F.2d 701 (4th Cir. 1978), the plaintiff claimed that erosion and property damage to his farm were caused by the negligent opening of flood gates of a dam that was part of a multipurpose water project. In reversing a Rule 12(b)(6) dismissal, the court held that if the plaintiff could show that the purpose of the gate openings was to release water solely for recreational, as opposed to flood control purposes, the plaintiff could prevail under the Tort Claims Act. This approach apparently has not been used in other circuits, nor has the Fourth Circuit had occasion to apply it in any later cases.

The law of this circuit is consistent with the statement in *Hayes*, 585 F.2d at 702, that "[t]here is no immunity for flooding caused by a federal project unrelated to flood control." *See Pierce*, 650 F.2d at 203. This circuit has in only one opinion, however, denied government immunity, finding that flooding was unrelated to any Congressional flood control project. In that case, *Peterson v. United States*, 367 F.2d 271 (9th Cir. 1966), we considered flooding caused by engineers at Ladd Air Force Base in Alaska who, without warning, dynamited an ice jam and caused a damaging discharge of a large amount of ice and water downstream. This court in *Peterson* reviewed the purpose of 702c and the cases decided under it, all of which had involved negligent construction or operation of projects intended by Congress for flood control purposes. *See Stover v. United States*, 332 F.2d 204 (9th Cir.), *cert. denied*, 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 334 (1964); *Clark v. United States*, 218 F.2d 446 (9th Cir. 1954); *National Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir.), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954). We concluded that 702c did not apply to damages caused by flooding unrelated to such flood control projects. *Peterson*, 367 F.2d at 276.

The *Peterson* court, in articulating the difference between that case and cases where immunity was imposed, stated that the dynamiting of the ice jam "was wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization." *Id.* at 275. The plaintiff there made no attempt "to fasten liability upon the government upon any theory grounded upon any expenditure of federal funds for studies, preliminary examinations, surveys, reports, or construction in aid of control of destructive flood waters . . . ." *Id.*

This court has consistently used the "wholly unrelated" standard to determine whether 702c immunity applies. *See Pierce*, 650 F.2d at 203; *Aetna*, 628 F.2d at 1203; *McClaskey v. United States*, 386 F.2d 807, 808 n.1 (9th Cir. 1967). The *Peterson*

reasoning was also followed by the Fifth Circuit in *Graci v. United States,* 456 F.2d 20, 26 (5th Cir. 1971), when it held that liability for flooding caused by negligent construction of the Mississippi River-Gulf Outlet, a project which had nothing to do with flood control, was not barred by the 702c immunity.

■ When we apply the standard in *Peterson,* we must agree with the district court in *Morici I* that the government's immunity under 702c required dismissal of plaintiff's original complaint. Even if the project was being operated at the time of the negligence for a purpose other than flood control, the operation that caused the damage was not "wholly unrelated" to a Congressionally authorized flood control project. It is the relationship between the flooding and a project Congressionally authorized for flood control which is the controlling factor.

We find this holding entirely consonant with the legislative intent behind the enactment of § 702c. As the *Peterson* court stated:

> [I]t is clear that Congress intended ... Section 702c ... to be an integral part of a plan or policy on the part of the Government to embark on a vast construction program to prevent or minimize the incidences of loss occurring from floods and flood waters by the building of dikes, dams, levees, and related works, and to keep the Government entirely free from liability for damages when loss occurs, notwithstanding the works undertaken by the Government to minimize it.

*Peterson,* 367 F.2d at 275–76. The purpose of the immunity statute was more recently explained by the court in *Pierce* as "safeguard[ing] the United States against liability for damages resulting from floods whenever the United States by an act of Congress was engaged in the minimization of such damage." 650 F.2d at 204. *See also Stover v. United States,* 332 F.2d 204, 207 (9th Cir.), *cert. denied,* 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 334 (1964).

Having held that the district court properly dismissed the plaintiff's original complaint in *Morici I,* we must consider the district court's refusal to dismiss the amended complaint in *Morici II.* The amended complaint alleges what the parties have termed an "ultra vires" theory, namely that there can be liability if the acts that caused the damage were in furtherance of a purpose or purposes not authorized by Congress.[1]

■ We hold, applying the same *Peterson* standards that required dismissal of the original complaint, that the amended complaint similarly fails to state a cause of action. Under *Peterson,* it is not the purpose of the employees' conduct which is determinative. The employees in *Peterson* were in fact engaged in flood control. The determinative factor is instead the purpose of the project authorized by Congress. Since in this case the project was authorized by Congress for flood control purposes, and the flooding was related to use of that project, the immunity continues to attach. The difficulties and uncertainties of proof inherent in identifying the particular purpose of an employee's conduct at any given time in connection with a large multipurpose project further support our position that immunity under 702c should be determined by the overall purposes intended by Congress for the project, not the particular intent of a government employee at a specific time. We agree with the observation by the court in *Sanborn v. United States,* 453 F.Supp. 651, 659 (E.D.Cal.1977), quoting from the government's brief in that case, that "it is very difficult, if not impossible, as a practical matter to segregate particular ... water releases into precise categories of purpose; a single release may well serve multiple purposes, just as the project itself serves multiple purposes."

The order in 81–4075 (*Morici I*) is affirmed; the order in 81–4080 (*Morici II*) is reversed.

---

1. The district court recognized that there is at most a very narrow range of conduct outside the authorized purposes of Congress yet still within the scope of the employee's duty for *respondeat superior* purposes. *Morici II,* 500 F.Supp. at 719.