2. *See also Allstate Ins. Co. v. Hilsenrad,* 462 So.2d 1202, 1204 (Fla.Dist.Ct.App.1985) (general

---

**STATE OF WASHINGTON, Plaintiff,**

**v.**

**EAST COLUMBIA BASIN IRRIGATION DISTRICT; United States of America, Defendants.**

**EAST COLUMBIA BASIN IRRIGATION DISTRICT, Cross-claimant-Appellant,**

**v.**

**UNITED STATES of America, Cross-defendant-Appellee.**

**No. 96–35163.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1997.

Decided Jan. 27, 1997.

---

Andrew C. Bohrnsen, Bohrnsen & Owen, Spokane, Washington, Richard A. Lemargie, Lemargie & Whitaker, Ephrata, Washington, for defendant-appellant-cross-claimant-appellant.

Irene M. Solet, United States Department of Justice, Washington, D.C., for plaintiff-appellee-cross-defendant-appellee.

Before WRIGHT, CANBY and TASHIMA, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

### BACKGROUND:

The East Low Canal is one of several irrigation channels constructed in the early 1950s by the United States as part of the Columbia Basin Project. The project's combined: purposes are: generating energy through a power plant at the Grand Coulee Dam; irrigating the agricultural region south of the Dam; and facilitating flood control and navigation in Oregon by regulating the amount of water released from the Dam. Of the $487,030,228 that the Secretary of the Interior estimated the project would cost, in 1945, only $1 million was allocated to flood control and navigation.[1]

---

1. The reason for allocating cost among different purposes is that the states must repay the federal

Plaintiff, the East Columbia Basin Irrigation District ("the District"), manages the East Low Canal and surrounding works. In 1992, one of the Canal's retaining walls burst, causing flooding and damage in the region around Moses Lake, Washington. The District sued under the Federal Tort Claims Act, 28 U.S.C. 1346(b) alleging that the government negligently designed and built the Canal. The trial court dismissed the action for lack of subject matter jurisdiction, relying on the government's flood control immunity. We have jurisdiction over the District's appeal pursuant to 28 U.S.C. § 1291 and we affirm.

*ANALYSIS:*

*Flood Control Immunity*

### A. Standard of Review

██ A dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is reviewed de novo. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

### B. Standard for Immunity

The Flood Control Act, 33 U.S.C. § 702c, provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."[2] This circuit interprets § 702c to immunize the government so long as the damage sustained is "not wholly unrelated" to a project with flood control as one of its purposes. *McCarthy,* 850 F.2d at 561; *Morici Corp. v. United States,* 681 F.2d 645, 648 (9th Cir.1982). Some circuits have found this standard too broad, *see Hayes v. United States,* 585 F.2d 701 (4th Cir.1978), but it is

unquestionably the law of this circuit and, contrary to the District's argument, has never been disapproved by the Supreme Court.[3]

██ Section 702c immunity therefore applies as long as plaintiff's damages: (1) are caused by a flood or flood waters (2) from a federal project with flood control as one of its purposes and (3) are "not wholly unrelated" to the operation of the project.

### 1. Flood Water

██ "It is clear from § 702c's plain language that the terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *James,* 478 U.S. at 605, 106 S.Ct. at 3121; *see also Reese v. South Florida Water Mgt. Dist.,* 59 F.3d 1128, 1130 (11th Cir.1995)("Even assuming the water was released 'solely for' or 'only for' irrigation and other purposes, it was water contained within a multi-purpose federal flood control project, and *James* clearly held that all water in a federal flood control project is considered 'flood water' if it is part of the project.").

██ Under this broad definition, the waters that spilled from the East Low Canal were "flood waters." That they might not have been considered flood water under state law is irrelevant.

### 2. Flood Control Purpose

██ The statutes relating to construction of the Columbia Basin Project, the Commit-

government for its power-generating and irrigation expenses. *See* Reclamation Project Act of 1939, 59 Stat. 1187. The reason is not, as the District argues, that the Secretary is statutorily prohibited from using the project for flood control purposes in the absence of specific authorization.

2. Although it was enacted later, the FTCA does not override or repeal this immunity provision. *Aetna Ins. Co. v. United States,* 628 F.2d 1201 (9th Cir.1980).

3. The District erroneously contends that *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), favored the Fourth Circuit's approach in *Hayes* over this circuit's "not wholly unrelated" approach in *Morici.* In fact, the issue

was neither presented nor decided in *James.* In fact, the Supreme Court's failure to resolve the circuit split has been the subject of much discussion and speculation in recent cases. *See Hiersche v. United States,* 503 U.S. 923, 924, 112 S.Ct. 1304, 1304–05, 117 L.Ed.2d 525 (1992) (Stevens, J., commenting on the Court's denial of certiorari in case that would have required it to resolve the inter-circuit conflict); .*Boudreau v. United States,* 53 F.3d 81, 85 (5th Cir.1995) (discussing footnote 7 in *James,* which cites both *Hayes* and *Morici* without acknowledging their inconsistency); *Dawson v. United States,* 894 F.2d 70, 73 (3d Cir.1990) (same); *Pueblo de Cochiti v. United States,* 647 F.Supp. 538, 541 (D.N.M.1986) (same).

tee Bill that preceded the statutes, the letter of the Secretary of the Interior, and affidavits supplied by the government all establish that flood control is one of the Project's purposes.[4] The District does not present any contrary evidence.

The District urges us to regard the Canal separately from the rest of the Columbia Basin Project for the purposes of this inquiry. *Morici* prevents us from doing so. It concerned flooding of the Trinity River Diversion of the Central Valley Project in California. Although the Trinity River portion was devoted solely to irrigation purposes, we looked to the purposes of the Central Valley Project as a whole to determine whether flood control was among them. *Morici*, 681 F.2d at 648; *see also Morici v. United States*, 491 F.Supp. 466, 489–90 (E.D.Cal. 1980) (describing facts in detail).

The District also argues that § 702c may not apply where, as here, only a small portion of the project's costs were allocated to flood control. There is no legal basis for its argument. It is well settled that § 702c immunity applies when flood control is one of the purposes of the project where the flood occurs. It need not be the only, or even the predominant, purpose. *See McCarthy*, 850 F.2d at 562; *Morici*, 681 F.2d at 647; *Aetna v. United States*, 628 F.2d 1201, 1203 (9th Cir.1980); *McClaskey v. United States*, 386 F.2d 807 (9th Cir.1967).

Attempting to distinguish this case based on the proportion of costs allocated to flood control would unnecessarily complicate the law. It also would contravene the plain purposes of the statute: "[T]he sweeping language of § 702c was no drafting inadvertence. Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the government from 'any' liability associated with flood control." *James*, 478 U.S. at 608, 106 S.Ct. at 3122.

We do not regard it as unfair that the government enjoys § 702c immunity when it

has made such a comparatively small investment in flood control. By its grace, the legislature has chosen to waive the government's sovereign immunity for certain cases. That it has chosen to retain its immunity where, as here, it has used federal dollars to fund massive hydrological projects, does not strike us as inequitable.

Finally, we decline to create a new rule that would look to the timing of flood control expenditures rather than to the project's purposes. The "wholly unrelated" standard requires us to decide only whether an "act of Congress authoriz[es] expenditure of federal funds for flood control," *Peterson v. United States*, 367 F.2d 271, 271 (9th Cir.1966), not when and how such funds have been expended.

### 3. Damage "Not Wholly Unrelated" to Project

 The project has flood control as one of its purposes, and the events giving rise to this action were not wholly unrelated to the project. This ends our inquiry. We need not determine whether flood control efforts contributed to the flood. *See Morici*, 681 F.2d at 648 (holding that "the relationship between the flooding and a project Congressionally authorized for flood control ... is the controlling factor"); *Aetna*, 628 F.2d at 1204 (refusing to venture "into the morass of 'contributing causes,' 'superseding causes,' and 'intervening causes'")(quoting *Lunsford v. United States*, 570 F.2d 221, 228 n. 13 (8th Cir.1977)).[5]

### *CONCLUSION*

We affirm the dismissal of this action for lack of subject matter jurisdiction.

### AFFIRMED.

---

**4.** *See* House Committee Bill, H.R. 7446, 72d Cong., 1st Sess. (1932); 49 Stat. 1028 (1935); 50 Stat. 208 (1937); 53 Stat. 1187 (1939); 57 Stat. 14 (1943); Letter of the Secretary of the Interior transmitting the Joint Report on the Columbia Basin Project, House Document No. 172, 79th

Cong., 1st Sess. (1945); Gray Declaration; Yribar Declaration.

**5.** We need not address the government's alternative argument that Washington's statute of repose bars the action.