ISLANDS, INC., Plaintiff,

v.

**UNITED STATES BUREAU OF REC-
LAMATION, DEPARTMENT OF
the INTERIOR, Defendant.**

No. CIV.S–96–1937FCD/JFM.

United States District Court,
E.D. California.

March 11, 1999.

---

Theodore A. Kolb, Neil R. Bardack, McQuaid, Metzler, McCormick & Van Zandt L.L.P., San Francisco, CA, for Plaintiff.

Paul Seave, United States Attorney, Yoshinori H. Himel, Assistant United States Attorney, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

This is an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, for crop damage allegedly caused by the subsurface movement of groundwater. Defendant United States Bureau of Reclamation ("Bureau") moves to dismiss the action, Fed.R.Civ.P. 12(b)(1), or in the alternative, for summary judgment, Fed. R.Civ.P. 56(c), on the basis of lack of subject matter jurisdiction. More specifically, the Bureau argues that it is immune from suit under the Flood Control Act, 33 U.S.C. § 702c. For the reasons set forth below, the Bureau's motion to dismiss is granted.

## BACKGROUND [1]

Prospect Island is located in the Sacramento–San Joaquin Delta. Since in or about 1916 until at least 1963, Prospect Island served as a part of the floodway of the Yolo Bypass, meaning it was allowed to flood as a means of flood control. Levies were first constructed on Prospect Island in 1917 and 1918. The height of the levies, however, was restricted to 11 feet so as not to interfere with the island's function as part of the floodway.

In 1937, Congress authorized creation of the Central Valley Project ("CVP") for multiple purposes, including flood control. In 1963, the federal government constructed the Sacramento Ship Channel which, according to plaintiff, severed Prospect Island from the flood control flows of the Yolo Bypass and any residual flood control purpose. In 1992, Congress passed the Central Valley Project Improvement Act ("CVPIA"). The purposes of the CVPIA included (1) protecting, restoring and enhancing fish, wildlife, and associated habitats in the Central Valley and Trinity River Basins, and (2) addressing the impact of the CVP on fish, wildlife and associated habitats. *See* Central Valley Project Improvement Act, Pub.L. No. 102–575, Title 34, § 3407, 106 Stat. 4726 (1992), attached as Ex. 20 to Himel Decl. The CVPIA

established the Central Valley Project Restoration Fund ("Fund") "to provide funding from project beneficiaries for habitat restoration, improvement and acquisition, and other fish and wildlife restoration activities in the Central Valley Project area of California." *See* H.R.Rep. No. 103–135, 103d Cong., 1st Sess. 68 (1993), to accompany Energy and Water Development Appropriations Bill 1994, H.R. 2445, 103d Cong., 1st Sess. (1993) (selected pages), attached as Ex. 22 to Himel Dec. Fund revenues are derived from donations and payments by CVP beneficiaries. In accordance with the purposes of the CVPIA, in 1994, Congress allowed fund monies for the acquisition of Prospect Island. The United States purchased Prospect Island from the Trust for Public Land in January 1995.

The Bureau was in charge of regulating, controlling and maintaining levees on Prospect Island in the years 1994, 1995 and 1996. On March 14, 1995, water overtopped the Port of Sacramento levee and flooded a portion of Prospect Island. By March 24, 1995, water covered three-quarters of the Bureau's property on Prospect Island. This flooding caused the subsurface movement of groundwater from Prospect Island to Ryer Island (plaintiff's property) and caused the soil on Ryer Island to become saturated. The saturated soil prevented plaintiff from planting on his property and/or diminished its crop recovery in the years 1995 and 1996. Plaintiff contends that its damages were the result of the Bureau's negligent construction, maintenance and/or failure to repair the levees located on Prospect Island in the years 1994, 1995 and 1996 and/or its failure to remove the water from Prospect Island.

## STANDARD

The Bureau's motion to dismiss involves a factual attack on subject matter jurisdiction. In such a situation:

> [The court is] free to hear evidence regarding jurisdiction and to rule on that

---

1. The following facts are undisputed or as represented by plaintiff.

issue prior to trial, resolving factual disputes where necessary. In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) (quoting *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979))); *see also Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995) ("A court has wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).")

■ The court may not resolve disputed facts, however, where the jurisdictional issue is "dependent on the resolution of factual issues going to the merits." *Roberts,* 812 F.2d at 1177. A court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Id.; Holt,* 46 F.3d at 1003. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.,* 711 F.2d 138, 139 (9th Cir.1983); *Holt,* 46 F.3d at 1003. Here, resolution of the jurisdictional issue, i.e. whether the Bureau is immune from suit under § 702c, does not depend on the FTCA which provides the basis for the substantive claims in this case. Thus, the court will treat the Bureau's motion as one brought pursuant to Rule 12(b)(1). *Holt,* 46 F.3d at 1003; *see also McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

## ANALYSIS

■ The Flood Control Act, 33 U.S.C. § 702c, provides in pertinent part that:

No liability of any kind shall attach to or rest upon the United States for damage from or by floods or flood waters at any place.

The Ninth Circuit has interpreted 702c to immunize the United States from suit so long as the damage suffered is "not wholly unrelated" to a project with flood control as one of its purposes. *State of Washington v. East Columbia Basin Irrigation Dist.,* 105 F.3d 517, 519 (9th Cir.1997) (quoting *McCarthy,* 850 F.2d at 560. Accordingly:

Section 702c immunity ... applies as long as plaintiff's damages: (1) are caused by a flood or flood waters (2) from a federal project with flood control as one of its purposes and (3) are "not' wholly unrelated" to the operation of the project.

*East Columbia Basin Irrigation Dist.,* 105 F.3d at 519.

### 1. Flood Waters

■ Plaintiff does not dispute that Prospect Island is submerged by "flood waters." *See* First Amended Complaint ¶ 6. At oral argument, however, plaintiff argued that it was damaged as a result of the Bureau's failure to remove said flood waters, not as a result of the flood waters themselves. "[T]he terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *See East Columbia Basin Irrigation Dist.,* 105 F.3d at 519 (quoting *United States v. James,* 478 U.S. 597, 605, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986)). As the court explained in *Reese v. South Florida Water Mgt. Dist.,* 59 F.3d 1128, 1130 (11 Cir.1995):

[E]ven assuming the water was released "solely for" or "only for" irrigation and other purposes, it was water contained within a multi-purpose federal flood control project, and *James* clearly held that all water in a federal flood control pro-

ject is considered 'flood water' if it is part of the project.

(Quoted with approval in *East Columbia Basin Irrigation Dist.*, 105 F.3d at 519.)

Likewise, here, it is undisputed that the waters were contained within a multi-purpose federal flood control project, the CVP, and thus, is considered "flood water."

### 2. Flood Control Purpose

■ Plaintiff urges this court to consider Prospect Island as a distinct "project" separate and apart from the CVP for purposes of this inquiry. According to plaintiff, flood control is no longer a "purpose" of Prospect Island. *See* Opp. at 4:16–17 ("Whatever the purpose and use in the past, the recent acquisition and the current management of Prospect Island was and is expressly for wildlife conservation purposes.")

The Ninth Circuit recently rejected a similar argument in *East Columbia Basin Irrigation Dist.*, 105 F.3d at 520. That case involved the East Low Canal, one of several irrigation channels constructed as part of the Columbia Basin Project. In 1992, one of the Canal's retaining walls burst, causing flooding and damage to the surrounding area. Plaintiff sued alleging the government negligently designed and built the canal. Plaintiff did not dispute that flood control was one of the project's purposes, rather, it urged the court to regard the Canal separately from the rest of the project. The court held that under *Morici Corp. v. United States*, 681 F.2d 645 (9th Cir.1982), it was prevented from doing so. *East Columbia Basin Irrigation Dist.*, 105 F.3d at 520.

[*Morici* ] concerned flooding of the Trinity River Diversion of the Central Valley Project in California. Although the Trinity River portion was devoted solely to irrigation purposes, we looked to the Central Valley Project as a whole to determine whether flood control was among them.

*Id.* at 520 (citing *Morici*, 681 F.2d at 648).

Here, Prospect Island remains part of the CVP. Indeed, it was acquired as part of the CVPIA. Even assuming at all relevant times herein Prospect Island was and is devoted solely to conservation purposes, the court must look to the purposes of the CVP as a whole to determine whether flood control was among them. *See East Columbia Basin Irrigation Dist.*, 105 F.3d at 520; *Morici*, 681 F.2d at 648.

This determination is consistent with *Graham v. United States*, 18 F.Supp.2d 1137, 1141 (E.D.Wash.1997). There the district court considered the Wapato Irrigation Project separately from the larger Yakima Project, which along with irrigation is involved in flood control, where the projects were related only by a contractual agreement for the provision of irrigation water. As set forth above, Prospect Island enjoys a much closer relationship to the CVP. Indeed, Prospect Island is an integral component of the CVP, a multi-faceted project, which has flood control among its many purposes.

### 3. Damages "Not Wholly Unrelated" to Project

The nexus requirement is satisfied "so long as the damage or the injury was not 'wholly unrelated' to a Congressionally authorized flood control project." *McCarthy*, 850 F.2d at 560. The CVP has flood control as one of its purposes, and the events giving rise to this action were not "wholly unrelated" to the CVP.

### CONCLUSION

Because Prospect Island was flooded with "flood water," and plaintiff's damages were not "wholly unrelated" to the operation of a federal flood control project, immunity attaches and bars plaintiff's claim. Accordingly, the Bureau's motion to dismiss for lack of subject matter jurisdiction is GRANTED. The clerk of the court is

hereby directed to close this file. The status conference set for June 11, 1999 is VACATED.