177 F.3d 834
 99 Cal. Daily Op. Serv. 3722, 1999 Daily
Journal D.A.R. 4783
CENTRAL GREEN COMPANY, a California Limited Partnership,
Plaintiff-Appellant,
v.
UNITED STATES of America; Madera Irrigation District,
Defendants-Appellees.
 No. 97-17321.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1998.
Decided May 20, 1999.
 
 Timothy Jones, Sagaser, Franson, Jamison & Jones, Fresno, California, for the plaintiff-appellant.
 Constance A. Wynn, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California; Robert E. Coyle, District Judge, Presiding. D.C. No. CV-96-05541-REC/SMS.
 Before: HUG, Chief Judge, FLETCHER, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 I. OVERVIEW
 
 1
 Central Green Company ("Central Green") appeals a district court decision dismissing its claims against the United States for lack of subject matter jurisdiction. Central Green sued the United States under the Federal Tort Claims Act for damage to its pistachio farm caused by subsurface and surface water flooding from the Madera Canal. The district court dismissed the action for lack of subject matter jurisdiction, finding that Central Green's claims were barred by 33 U.S.C. § 702c immunity for management of flood control waters. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 II. BACKGROUND
 
 2
 Appellant Central Green owns one thousand acres of pistachio orchards in Madera County, California. The Madera Canal is a federal water management project that runs through Central Green's property, conveying irrigation water throughout the San Joaquin Valley. Although flood control is not one of the stated purposes of the Madera Canal, the Madera Canal is part of the Central Valley Project, which has flood control as one of its congressionally authorized purposes. The United States owns the Madera Canal but has entered into an agreement giving the Madera Irrigation District and the Chowchilla Water District authority to operate and maintain the Madera Canal.
 
 
 3
 Central Green sued the United States and the Madera Irrigation District alleging that due to negligent planning, design, construction, or maintenance, the Madera Canal is leaking, causing surface and subsurface flooding of Central Green's property. Central Green also alleges that subsurface flooding created a shallow water table, resulting in irreparable harm to Central Green's pistachio orchard and increasing farming and harvesting costs.
 
 
 4
 Asserting § 702c immunity, the United States moved for judgment on the pleadings. The district court granted the United States's motion and dismissed Central Green's claims against the United States. The district court also stayed Central Green's claims against Madera Irrigation District pending resolution of this appeal.
 
 III. STANDARD OF REVIEW
 
 5
 A district court's conclusion that it lacks subject matter jurisdiction is reviewed de novo. H2O Houseboat Vacations, Inc. v. Hernandez, 103 F.3d 914, 916 (9th Cir.1996).
 
 IV. DISCUSSION
 A. Immunity under § 702c
 
 6
 of the Flood Control Act
 
 
 7
 Section 702c confers broad immunity for claims arising from the design, operation, or management of federally authorized flood control projects. Specifically, it provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c (1994). In United States v. James, 478 U.S. 597, 604, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), the Supreme Court, in interpreting § 702c, noted that "[i]t is difficult to imagine broader language." Indeed, the only limitation in the plain language of the statute is that the United States is only immune from damage caused by "floods or flood waters."
 
 
 8
 B."Flood Waters"
 
 
 9
 Central Green's sole argument on appeal is that the water that caused damage to its pistachio farm was not "flood water" because it was held for irrigation purposes rather than flood control. For support, Central Green relies on the Supreme Court's decision in James. In James, the plaintiffs were injured when they were swept through a dam as water was released to control flooding. Id. at 599. The Supreme Court held that § 702c protected the government from damages caused by failure to warn boaters of impending danger caused by releasing water through federal flood control projects. Id. at 604. The Supreme Court also addressed the issue of what constituted "flood waters" and held that
 
 
 10
 [i]t is thus clear from § 702c's plain language that the terms "flood" and "flood waters" apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control.
 
 
 11
 Id. at 605.
 
 
 12
 Relying on this definition, Central Green argues that the Supreme Court created a two-part test to determine when water is "flood water." Central Green's proposed two-part test would require that for water to be "flood water" it would have to (1) pass through a flood control project and (2) be for the purposes of or related to flood control. Ultimately, Central Green argues that because the water that damaged its crops was held for irrigation and not flood control purposes, § 702c immunity should not apply.
 
 
 13
 Central Green's argument raises an apparent contradiction in the James decision. In the footnote to the definition of "flood waters," the Supreme Court favorably cited both Morici Corp. v. United States, 681 F.2d 645 (9th Cir.1982), and Hayes v. United States, 585 F.2d 701 (4th Cir.1978). James, 478 U.S. at 605 n. 7. Although both Morici and Hayes provide that there is no immunity for flooding caused by federal projects unrelated to flood control, Morici, 681 F.2d at 647, the two cases appear to be inconsistent. Morici applied the "not wholly unrelated" test and held that the purpose for which the project was being operated at the time of the flood damage was irrelevant to the issue of whether immunity applied. 681 F.2d at 648 ("Even if the project was being operated at the time of the negligence for a purpose other than flood control, the operation that caused the damage was not 'wholly unrelated' to a Congressionally authorized flood control project."). Conversely, Hayes held that whether immunity attached depended on the operation of the flood control project at the time of the injury. 585 F.2d at 702-3.
 
 
 14
 The apparent contradiction between these two cases and the resulting question about the definition of "flood waters" has been debated in the circuit courts. See Boudreau v. United States, 53 F.3d 81, 84-85 (5th Cir.1995) (discussing the split in the circuits over the correct application of James ); Dawson v. United States, 894 F.2d 70, 73 (3d Cir.1990) (noting the disagreement between the circuits). The circuits disagree over the degree of relation the injury must have with flood control activities before immunity will attach. Although we have held that immunity protects the government as long as the damage is not wholly unrelated to a project with flood control as one of its purposes, other circuits have found that standard to be too broad and require a more substantial nexus between flood control activities and the damage incurred. Compare Washington v. East Columbia Basin Irr. Dist., 105 F.3d 517, 519 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997), with Holt v. United States, 46 F.3d 1000, 1004-05 (10th Cir.1995), and Boyd v. United States, 881 F.2d 895, 899-900 (10th Cir.1989).
 
 
 15
 Central Green's two-part test finds support in other circuits. The Fourth Circuit looks at the purpose for which the water was being held and ultimately released to determine whether immunity attaches. Hayes, 585 F.2d at 702-03 ("If the plaintiff could prove damage to his farm as a result of the dam's operation as a recreational facility without relation to the operation of the dam as a flood control project, he would avoid the absolute bar of § 702c."). The Seventh Circuit refuses to grant § 702c immunity unless flood-control activities increased the likelihood of the plaintiff's injuries. Bailey v. United States, 35 F.3d 1118, 1124 (7th Cir.1994) (remanding for a hearing to determine whether injuries resulted from flood control activities); Fryman v. United States, 901 F.2d 79, 82 (7th Cir.1990) (same). The Tenth Circuit has adopted the two part test that requires the existence of a nexus between flood control activity and the plaintiff's injury. Holt, 46 F.3d at 1004-05.
 
 
 16
 Despite support for the two-part test in other circuits, we have consistently focused on the "related to" language in the definition of "flood waters" and rejected Central Green's argument. See East Columbia Basin, 105 F.3d at 519-20; McCarthy v. United States, 850 F.2d 558, 562-63 (9th Cir.1988); Morici, 681 F.2d at 648. We first announced the "not wholly unrelated" test in Peterson v. United States, 367 F.2d 271 (9th Cir.1966). In Peterson, engineers at the Ladd Air Force base in Alaska dynamited ice and snow that was collecting and damming the flow of a river. Id. at 275. The explosion caused a large discharge of ice and water downstream, damaging Peterson's vessel. Id. We held that immunity did not protect the government's actions because "[t]he decision to dynamite the ice jam was wholly unrelated to any act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization." Id. We also distinguished dynamiting the ice jam from government programs aimed at preventing or minimizing damage caused by floods. Id. at 275-76.
 
 
 17
 Later in Morici, we again addressed the scope of § 702c. In Morici, the plaintiff argued that negligent operation of a dam and reservoir resulted in excessively high levels of water in the Sacramento River which caused water to seep out, damaging plaintiff's farm. 681 F.2d at 646. Morici did not argue that the water that damaged its crops was not flood water but argued instead that the negligent release of water from the dam was wholly unrelated to flood control activities. Id. at 647. We held that it was not the purpose of the specific release but rather the congressionally authorized purpose of the project which conferred immunity. Id. at 648. We also noted the impossibility of scrutinizing every release from a dam to determine when immunity attached. Id. Consequently, we do not look at the purpose or use of the project at the time of the damage. Morici requires that we look at what purposes Congress has authorized the project to perform. Although the dam at the time of Morici's injury was not performing a flood control purpose, the dam was a congressionally authorized flood control project and was therefore protected by § 702c immunity.
 
 
 18
 After Morici was decided, the Supreme Court issued the James opinion. After James, we addressed § 702c immunity in McCarthy. In McCarthy, the plaintiff was injured when he dove into a shallow area of a lake owned by the United States and fractured his neck. 850 F.2d at 559. Plaintiff argued that the government was negligent in failing to warn divers of the known risks. Id. at 559-60. We held that immunity applied and that the water in the lake was "flood water" because (1) the lake was a federal flood control project and (2) because the level of the lake was monitored daily and released through the dam when necessary. Id. at 561. Again, we expressly rejected the argument that immunity was determined by the current use of the federal flood control project. Id. at 561-62. Although the lake in McCarthy was being used primarily for recreational purposes at the time of McCarthy's injury, immunity attached because the lake was behind a dam constructed as part of a congressionally authorized flood control project. Id. at 562 ("So long as a project is authorized by Congress for flood control purposes, and the damage or injury is related to the use of that project, immunity continues to attach.").
 
 
 19
 The most recent Ninth Circuit case dealing with flood control immunity is East Columbia Basin. In East Columbia Basin, an irrigation canal's retaining walls burst, flooding areas around Moses Lake, Washington. 105 F.3d at 519. The irrigation canal was part of the Columbia Basin Project that has flood control as one of its congressionally authorized purposes. Id. at 519-520. We held again that the congressionally authorized purpose of the project as a whole, not the actual purpose for which the project was being operated, was dispositive in determining whether immunity applied. Id. We concluded that the government had immunity because the canal was part of a larger project with flood control as one of its purposes.
 
 
 20
 After reviewing the James decision, we are not certain that § 702c should be construed as broadly as our prior decisions. The plain language of the definition of "flood waters" in James requires that the water be held in a federal flood control project "for purposes of or related to flood control." 478 U.S. at 605. Our decisions have focused on the "related to" language in the James definition and conferred very broad immunity. However, as explained above, the Morici, McCarthy, and East Columbia Basin cases seem to delete the second requirement in James and grant immunity if the water was contained in a federal flood control project.
 
 
 21
 Our prior holdings are not without support. As the Supreme Court noted in James, Congress drafted § 702c with the intent of conferring broad immunity. Id. at 607-08 (discussing the legislative history of § 702c). Congress was willing to provide flood protections at great costs to the government but did not want to be liable for any costs other than construction. Id. Thus the broad immunity conferred by the "not wholly unrelated" test may be congressionally mandated. Additionally, other circuits have also adopted approaches similar to ours. See Reese v. South Florida Water Management Dist., 59 F.3d 1128, 1130-31 (11th Cir.1995) (holding that any water held in a flood control project is "flood water" regardless of the purpose for which the water is being used); Boudreau v. United States, 53 F.3d 81, 85-86 (5th Cir.1995) (extending immunity to preclude claims for damages arising out of activities including management of recreational activities arising out of management of flood control project); Fisher v. United States Army Corps of Engineers, 31 F.3d 683, 684-85 (8th Cir.1994) (holding that flood control immunity applies when government flood control activities is a substantial cause in the injury); Dawson v. U.S., 894 F.2d 70, 73-74 (3d Cir.1990) (adopting this circuits reasoning in McCarthy ).
 
 
 22
 In light of our prior holdings, we are required to affirm the district court decision. The Madera Canal is part of the Central Valley Project which has flood control as one of its congressionally authorized purposes. As part of the Central Valley Project, the Madera Canal itself is a congressionally authorized flood control project. See East Columbia Basin, 105 F.3d at 520; Morici, 681 F.2d at 647. Although the water in the Madera Canal was not held for the purpose of flood control, because it was part of the Central Valley Project, it was "not wholly unrelated" to flood control. See Morici, 681 F.2d at 648. As interpreted by this circuit, § 702c immunity prevents suit for damage from flooding caused by the negligent construction and maintenance of irrigation canals that are part of a flood control project. See East Columbia Basin, 105 F.3d at 520.
 
 
 23
 Despite our decision to affirm, we recognize the harsh result of this decision. The "not wholly unrelated" test applied by this and other circuits reads broadly an already broadly-written grant of immunity. There does not appear to be any set of facts where the government is not immune from damage arising from water that at one time passed through part of the Central Valley or other flood control project. Indeed, counsel for the government admitted at oral argument that she could not think of any situation where § 702c would not confer immunity.
 
 
 24
 The Madera Canal disburses irrigation water throughout the San Joaquin Valley. The canal is not a flood control project and serves no flood control purpose. Despite having no flood control purpose, the Madera Canal enjoys § 702c flood control immunity solely because it is a branch of the Central Valley Project. Consequently, Central Green is left without a tort remedy for damages to its crops and farming equipment caused by the government's alleged negligence in constructing and maintaining the Madera Canal.
 
 
 25
 We recognize that had this case been instituted in the Fourth, Seventh or Tenth Circuit the government would probably not enjoy flood control immunity. See Fryman, 901 F.2d at 82 (requiring that flood control activities increase the probability of injury before conferring immunity); Boyd, 881 F.2d at 900 (requiring a nexus between flood control activity and the damage incurred); Hayes, 585 F.2d at 702-03. In denying certiorari to a case that could have resolved the conflict in circuit opinions on this issue, Justice Stevens suggested that this split in the circuits could be "resolved more effectively by Congress." Hiersche v. United States, 503 U.S. 923, 925, 112 S.Ct. 1304, 117 L.Ed.2d 525 (1992). While agreeing with Justice Stevens, we believe this case might be an appropriate subject for Supreme Court review.
 
 V. CONCLUSION
 
 26
 For the reasons stated above, we affirm the dismissal of this action for lack of subject matter jurisdiction.
 
 
 27
 AFFIRMED.