Gary GRAHAM and Nancy Graham, husband and wife, d/b/a/ Graham Ranch, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CY–96–3170–RHW.

United States District Court, E.D. Washington.

Dec. 9, 1997.

Michael Thomas Watkins, Seattle, Washington, J. Jarrette Sandlin, Zillah, Washington, for Plaintiffs.

Charles Pinnell, Seattle, Washington, Robert A. Ellis, Yakima, Washington, for Defendant.

## ORDER DENYING REQUEST FOR SOVEREIGN IMMUNITY UNDER 33 U.S.C. § 702c AND SETTING TRIAL SCHEDULE

WHALEY, District Judge.

### BACKGROUND

Plaintiffs Gary and Nancy Graham own and operate a cow-calf ranch and farm, known as Graham Ranch, in Yakima County, Washington, which is within the Wapato Irrigation Project ("WIP"). Flooding occurred on the Graham Ranch during the early months of 1995, 1996 and 1997. Plaintiffs' Complaint alleges that the flooding was caused by negligent construction by the Bureau of Reclamation of a fish screen on the WIP, and negligent maintenance by the Bureau of Indian Affairs of the fish screen and of a diversion canal located on the WIP. Plaintiffs claim liability under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

Defendant United States has moved for summary judgment (*see* Ct. Rec. 34), arguing that the Government is immune from liability under the Flood Control Act, 33 U.S.C. § 702c. A telephonic hearing was held on Defendant's motion on November 25, 1997. J.J. Sandlin appeared on behalf of Plaintiffs and Assistant United States Attorney Robert Ellis appeared on behalf of Defendant. At the close of the hearing, the Court informed the parties that the record did not appear clear At the close of the hearing, the Court informed the parties that the record did not appear clear enough to enter an order on Defendant's motion. Accordingly, the Court ruled that, unless the parties were informed otherwise, Defendant's motion for summary judgment would be denied and they should prepare for a trial on immunity to be held on December 1, 1997, the original trial date.

On December 1, 1997, trial was held in Yakima, Washington. Defendant presented testimony from John Keys, regional director for the Pacific Northwest Region of the Bureau of Reclamation; Pierce Harrison, Project Administrator of the WIP; and Walter Fite, Area Manager for the Upper Columbia Area of the Bureau of Reclamation. Plaintiffs presented testimony from Gary Graham; Bob Tuck, a contractor to the Yakama Indian Nation; and Ross Sockzehigh, Tribal Chairman of the Yakama Indian Nation. The parties also stipulated to the authenticity of a number of historical and legal documents located in Exhibit 1001.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO UNDERLYING ISSUES [1]

The flooding on Plaintiffs' property was caused by waters flowing from the Toppenish Creek through the WIP. The WIP is an irrigation project constructed at least in part [2] by the Bureau of Reclamation and owned by the federal government. The purpose of the WIP is to deliver irrigation water to the reservation land of the Yakama Indian Nation. [3] It is undisputed that the WIP is not engaged in any federal flood control activities.

The Bureau of Reclamation's involvement in construction of water facilities extends outside of the WIP to a series of dams, water reservoirs, and other irrigation districts. This larger system is known as the Yakima Project. [4] Along with irrigation activities, the

---

1. Because the issues of law and fact governing the question of immunity are fundamentally intertwined, they are discussed simultaneously.

2. The evidence at trial indicated that some of the irrigation facilities on the Yakama Indian Reservation were constructed before involvement by the Bureau of Reclamation. The record does not, however, indicate what portion of the facilities predated the Bureau of Reclamation's involvement. In any event, all of the pre-existing facilities were subsumed into the Bureau of Reclamation's larger construction project.

3. Although Plaintiffs are not tribal members, their ranch is located on the Yakama Indian Reservation.

4. The Yakima Project was initially established as a reclamation project in 1902. Chap. 1093, Acts of 1902, 32 Stat. 388–391, located at pp. 1–4 of

Yakima Project facilities are also involved in flood control activities through maintenance of various water storage reservoirs.

The Bureau of Reclamation has retained operation and maintenance duties of some central structures of the Yakima Project, but has transferred such responsibilities to irrigation districts for irrigation projects. Consequently, the "Yakima Project" refers to two different endeavors—the broad-ranging original construction project and the narrow present day-to-day operations of central facilities.

Most irrigation units are municipal entities. However, because the WIP is on a tribal reservation, responsibility for its operation and management lies with the Bureau of Indian Affairs ("BIA").[5]

Although operated separately, the WIP remains connected with the Yakima Project through a contractual relationship for water. During irrigation season, which runs from April to October, WIP receives water diverted from the Yakima River via the Toppenish Creek by Yakima Project canals and facilities. In return for this benefit, the BIA pays an annual assessment to the Bureau of Reclamation. *See* Memorandums of Understanding, pp. 44–57 of Exhibit 1001.

The fish screen located on Plaintiffs' ranch was not constructed pursuant to the Yakima Project or WIP. Instead, in the early 1980s, Congress approved a conservation project to be undertaken by the Bonneville Power Administration ("BPA") in conjunction with the states of Idaho, Montana, Oregon, and Washington for the purposes of energy conservation and mitigation of damage to fish and wildlife created by hydro-electric power facilities. *See* 16 U.S.C. § 839 *et seq.* In accordance with this conservation project, BPA contracted with the Bureau of Reclamation and others to construct a number of fish screen and fish ladder facilities, including the fish screen at issue in this litigation. The BPA's fish screens were installed on private and public lands, in areas both within and outside of federal flood control projects

As a final background matter, most of the facts surrounding the actual flooding of Plaintiffs' ranch are not relevant to the present determination of immunity with the exception of the fact that, at the time of the January floods on Plaintiffs' property, the WIP was not receiving water from the Yakima Project.

## THE APPLICATION OF THE FEDERAL FLOOD CONTROL ACT, 33 U.S.C. § 702c

*1. The Scope of Immunity Under the Federal Flood Control Act*

■ Congress enacted the Federal Flood Control Act in response to the 1927 flood of the Mississippi River. The portion of the act at issue in this case states that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. This provision operates as an exception to governmental liability under the Federal Tort Claims Act. In creating this provision, Congress meant "to ensure beyond doubt that sovereign immunity would protect the Government from 'any' liability associated with flood control." *United States v. James*, 478 U.S. 597, 608, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986).

■ The Ninth Circuit has interpreted § 702c immunity to involve a three-part test. Specifically, immunity attaches if a plaintiff's damages "(1) are caused by a flood or flood waters (2) from a federal project with flood control as one of its purposes and (3) are 'not wholly unrelated' to the operation of the project." *State of Washington v. East Columbia Basin Irrigation Dist.*, 105 F.3d 517, 519 (9th Cir.1997) (*E.C.B.I.D.*).

■ Here, all parties agree that the controlling question is whether Plaintiffs' damages were "wholly unrelated" to the operation of a federal flood control project. In

Exhibit 1001. In 1906, Congress added the Wapato unit as part of the Yakima Project. Chap. 518, Acts of 1906, 34 Stat. 53–55, located at pp. 5–7 of Exhibit 1001.

5. The Yakima Project handed operation and management of the WIP to the BIA immediately upon acquisition and construction of the facilities. As to other irrigation units, the transfer occurred after a number of years.

*McCarthy v. United States*, 850 F.2d 558, 562 (9th Cir.1988), the Ninth Circuit panel explained that damages are not wholly unrelated, "[s]o long as a project is authorized by Congress for flood control purposes, and the damage or injury is related to the use of that project." Determination of immunity under the "wholly unrelated" test does not depend upon the purpose of the particular activity that gave rise to damages, but rather the purpose of the project pursuant to which the activity was undertaken. So long as one of the purposes of the project is federal flood control, it does not matter that a particular activity was aimed at another purpose, such as irrigation. *Id.* at 561–62. *See also E.C.B.I.D.*, 105 F.3d at 519.

In order to assess the charges in Plaintiffs' complaint under the "wholly unrelated" test, the Government's activities must be separated according to their applicable projects. Here, the construction of the fish screen was undertaken pursuant to the Columbia Basin Conservation Project. The maintenance of the fish screen and operation of the diversion canal were in accordance with the WIP.

### 2. Construction of the Fish Screen

■ Looking at the fish screen, the Government concedes that the conservation project does not have any flood control purposes. The project was created solely for energy conservation and mitigation of damages to fish and wildlife. Nevertheless, the Government argues that immunity attaches because the fish screen was constructed on the WIP, which is affiliated with the Yakima Project and the Yakima Project, in turn, is engaged in flood control activities. According to the Government, had the WIP not been in place, then there would not have been diversion canals on and around Plaintiffs' ranch and a fish screen would not have been necessary to protect fish from being diverted into irrigation waters.

Even assuming that the relationship between WIP and the Yakima Project is sufficient to consider them the same "project" for the purposes of immunity, an argument rejected in the analysis below, the Government's argument fails because it does not analyze immunity according to the specific project under which the alleged negligent activity was taken. As explained above, in determining immunity, the test looks at the project under which negligence is alleged and, if one of the purposes of is flood control, then absolves the Government of liability. Here, the project under which the fish screens were constructed was aimed at conservation with the BPA as the lead agency. There was no flood control purpose. It was merely coincidental that the activities giving rise to Plaintiffs' claim of negligence occurred on a site affiliated with a federal flood control project. Plaintiffs' claim of negligent construction has nothing to do with the construction or maintenance of the WIP or Yakima Project. Furthermore, as explained by Bob Tuck at trial, fish screen and ladder facilities have been constructed under the conservation program on all sorts of bodies of water, not just on government-owned flood control or irrigation facilities. The government conceded at trial that § 702c immunity would not attach if, for example, a plaintiff alleged liability by the federal government for negligent construction of a fish screen on national forest reserve land or at Horn Rapids dam, a privately owned facility. The analysis of the present case is precisely analogous since the determination of the "wholly unrelated" test follows the project under which the Government's activities were taken.

### 3. Operation and Maintenance of the Fish Screen and Diversion Valve

■ A more difficult question is whether BIA's maintenance activities of the WIP are "wholly unrelated" to the use of a federal flood control project. The difficulty lies in determining what is meant by a "project" and whether a contractual and historical relationship between projects is sufficient to tie in immunity under the "wholly unrelated" test. The Court concludes that, in this case, the relationship is not sufficient.

WIP itself is not engaged in any federal flood control activities. However, WIP is affiliated with the Yakima Project in that it was initially constructed and acquired as a part of the larger project and it receives water from the Yakima Project in return for

annual payments.[6] The relationship between WIP and the Yakima Project is similar to that between the East Columbia Basin Irrigation District and the Columbia Basin Project, discussed in *E.C.B.I.D.* The Columbia Basin Project is involved in flood control activities, but the irrigation district is not. The Bureau of Reclamation originally constructed and operated the East Columbia Basin Irrigation District as part of the Columbia Basin Project, but in 1969 the bureau transferred operation and maintenance to the irrigation district. *See State of Washington v. East Columbia Basin Irrigation District,* CS–94–71–WFN, pp. 58–66 of Exhibit 1001. While there are similarities between the facts of *E.C.B.I.D.* and the case at hand, the analysis in *E.C.B.I.D.* does not control this case because of the distinct nature of Plaintiffs' allegations.

In *E.C.B.I.D.*, the irrigation district sued the federal government for faulty construction of an irrigation canal that burst and caused flooding. The Ninth Circuit upheld the district court's application of § 702c on the basis that construction of the irrigation canal was an integral part of the construction of the overall Columbia Basin Project. Consequently, any negligence in the construction of the canal occurred pursuant to the undertaking of a project, one purpose of which was flood control. The allegations in the present case are distinguishable from those in *E.C.B.I.D.* Plaintiffs do not allege that the Bureau of Reclamation was negligent in constructing any of the WIP facilities—actions taken as part of the broad historical existence of the Yakima Project. Instead, Plaintiffs' allege that Bureau of Indian Affairs

employees were negligent in their operation of the WIP. Consequently, the Yakima Project and the WIP must be viewed according to their present relationship.

By separating the Yakima Project from irrigation units such as the WIP, the federal government ended the historical nature of the Yakima Project and created distinct projects presently related only by a contractual agreement for water supply. The WIP is not engaged in flood control and Plaintiffs' allegations of negligence have nothing to do with WIP's present relationship to the Yakima Project. In fact, the flooding occurred in the off-season, when water flowing through the WIP came solely from natural run-off to the Toppenish Creek. Consequently, the WIP must be assessed according to its separate nature and immunity does not attach.

Another way of looking at the issue is to examine the federal actors involved and to determine under what larger project they were working. Employees from the BIA were responsible for alleged negligence in maintaining the fish screen facility and the diversion valve. Their actions were taken pursuant to the BIA's larger purpose of servicing Indian reservations in a municipal capacity. *See* 24 U.S.C. § 1 *et seq.*[7] As all parties agree, the BIA is not charged with any Congressionally mandated flood-control activities. Consequently, the "wholly unrelated" test is met.

### 4. Conclusion

Determining that the federal government is not immune in this case under the Federal Flood Control Act has not been an easy task. The case law interpreting 33 U.S.C. § 702c is

---

6. The Government characterizes WIP and the Yakima Project as unseverable. However, the only official documents linking the two endeavors are the initial 1911 Bureau of Reclamation authorization and the contractual memorandums of understanding. *See* Chap. 518, Acts of 1906, 34 Stat. 53–55, located at pp. 5–7 of Exhibit 1001; 1911 Message of President Taft, located at pp. 8–15 of Exhibit 1001; Memorandums of Understanding, located at pp. 44–57 of Exhibit 1001. While the documents reflect that the WIP and the Yakima Project were historically a part of the same project, the present relationship, as governed by the Memorandums of Understanding, is limited to the consumption and supply of water for irrigation purposes.

7. The limited nature of the BIA's involvement is made clear by the fact that outside of the Yakama Indian Reservation, maintenance duties such as that performed by the BIA, are contracted to municipal irrigation districts. Had Plaintiffs' ranch been located off of the reservation, adjacent to a different irrigation unit, Plaintiffs would have been able to sue the irrigation district for negligent maintenance. The federal government cannot escape liability simply because it plays the role of a municipal irrigation district on reservation land.

extremely broad and, at first blush, appears to state that any articulable relationship between a federal flood control project and the negligence causing injury will result in immunity. Were this the case, then immunity would attach since all the alleged negligent acts took place on the WIP which has a historical and contractual relationship with the Yakima Project. However, the Court concludes that the test is not quite so broad. Numerous agencies acting in various capacities are located in the federal government and connections can be drawn between all of them since they are all parts of the same federal system. Allowing the definition of "wholly unrelated" to extend this far could conceivably swallow the entire viability of the Federal Tort Claims Act in the flood water context. This cannot be correct. Instead, the manner in which the Supreme Court and Ninth Circuit have determined that immunity is to be assessed is to divide the government's actions into specific "projects" and then to look at the purposes of the project at hand. Being careful to analyze the Government's conduct according to project and not permitting two projects to be judged the same merely because they are related, the Court concludes that the "wholly unrelated" test applies to keep the Plaintiffs' action out of the Federal Flood Control Act.

Today's decision is consistent with the purposes of § 702c. By holding the Bureau of Reclamation to answer to claims of negligent construction of its fish screen and the BIA for claims of maintenance and operation of federal irrigation facilities, the Court is not chilling the federal government's efforts to engage in flood control activities. Instead, today's decision makes clear that the Government must act with due care in its operations and that liability for negligence cannot be escaped by pointing to a mere relationship with a federal flood control facility.

**IT IS HEREBY ORDERED:**

1. Defendant is not immune from liability for the allegations contained in Plaintiffs' complaint under 33 U.S.C. § 702c.

2. Defendant's Motion for Summary Judgment **(Ct.Rec.34)** is **DENIED.**

3. Defendant's motion to dismiss Plaintiffs' 42 U.S.C. § 1983 allegations **(Ct.Rec.29)** is **GRANTED.**

4. Plaintiffs' Motion to Shorten Time and to Take Judicial Notice **(Ct.Rec.43)** is **GRANTED.**

5. Defendant's oral motion to continue trial on liability is **GRANTED.** The existing Scheduling Order (Ct.Rec.19) is amended as follows:

a. The parties shall contact United States Magistrate Judge Suko to schedule a settlement conference on or before January 30, 1998. This order will serve as a referral, and the parties need not obtain any further approval but shall notify this Court if settlement conferences interfere with the schedule set forth herein. Judge Suko will determine whether a settlement conference should be held, and shall inform the parties of the procedural and filing requirements relating to the conference.

b. The parties shall exchange the materials identified in Fed.R.Civ.P. 26(a)(2)(B) in accordance with the following schedule but shall not file these materials with the Court. Any experts yet to be identified shall be identified by December 15, 1997. Pre-trial disclosure of the identity of all other persons shall conform to the requirements of Fed. R.Civ.P. 26(a)(1) (persons with relevant knowledge) and 26(a)(3) (witnesses).

c. All discovery shall be completed on or before January 30, 1998. The parties shall file no discovery except as necessary to support motions. Counsel may contact the court telephonically to obtain an expedited ruling on discovery questions if they wish to avoid the time and expense of a written motion.

d. All dispositive or otherwise substantive motions shall be filed and served on or before February 13, 1998. As with all motions filed in this case, dispositive motions shall be noted for hearing in accordance with the time frames, page limits and other procedures set forth in Local Rule 7.1(h). Motions for which expedited consideration is requested must be accompanied by a written request setting forth in detail the reasons for an expedited hearing.

e. Exhibit lists and witness lists shall be filed and served, and exhibits made available for inspection (or copies provided), on or before February 24, 1998.

Objections to such lists and any accompanying briefs shall be filed and served on or before March 3, 1998. Objections shall be heard at the pretrial conference.

In accordance with Local Rule 83.1(g), each party shall bring to trial and any other hearing on the merits, photocopies of their relevant pre-marked exhibits for the Court, opposing counsel, and testifying witness, unless it is not possible to do so because of the nature of an exhibit. It is recommended that these photocopies be organized into separate binders.

f. All unresolved evidentiary issues that may foreseeably arise during trial shall be addressed by motions in limine to be filed and served on or before March 3, 1998. Such motions will be addressed and resolved at the pretrial conference.

g. Designation of substantive, as opposed to impeachment, deposition testimony shall be by highlighting and shall be served on or before February 24, 1998. Cross-designations by highlighting in a different color shall be served on or before March 6, 1998. Objections to any designated deposition testimony shall be filed and served on or before March 16, 1998 and shall be heard and resolved at the pretrial conference.

h. A telephonic pretrial conference will be held at 1:30 p.m., on March 24, 1998. At the time scheduled for the pretrial conference, the parties shall call the Court's conference line at (509) 353–3180. The parties should advise the Court if they believe that an in-person pretrial conference would be appropriate.

i. A joint Pretrial Order, prepared in accordance with the format provided in Local Rule 16(b), shall be filed on or before March 17, 1998, in written form and on a computer disk.

The list of exhibits contained in the joint Pretrial Order shall reflect the exhibit marking scheme described above. In preparing the joint Pretrial Order, the parties shall confer regarding duplicate exhibits and de-termine which party will submit such exhibits for trial.

j. Proposed findings of fact and conclusions of law shall be filed and served on or before April 3, 1998. Proposed findings of fact, annotated to supporting exhibits and testimony, and conclusions of law shall be submitted in written form and on a computer disk.

k. The non-jury trial shall commence at 9:00 a.m. on April 13, 1998, in Yakima, Washington. Counsel shall meet with the Court in chambers at 8:30 a.m. on the day of trial.

**The parties are advised to notify the Court as early as possible, should they find that discovery and trial preparation cannot be completed in accordance with the terms of this order.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel and to Magistrate Judge Suko.